[No. 21787.   Department One.   September 27, 1929.]

WALLACE W. ROCK *et al., Respondents,* v. AL. ABRASHIN *et al., Appellants.*[1]

*Paul, Long & Carlson,* for appellants.

*Frank A. Steele* and *Harry M. Westfall,* for respondents.

[1]Reported in 280 Pac. 740.

52

PER CURIAM.—In this action, tried by the court sitting without a jury, the respondents, who are husband and wife, recovered against the appellants in the sum of three hundred dollars on a complaint charging an abuse of legal process.

The facts, as we gather them from the record, are in substance these: The appellant, Abrashin, during the time of the transactions which gave rise to the controversy, conducted a grocery store in the city of Seattle. He sold on credit to the respondents groceries, which were used by them in their own support and in the support of their family. Later on, for the balance due on the account, they gave to Abrashin their promissory notes, four in number, for fifteen dollars each. These notes they did not pay, and Abrashin placed them in the hands of his co-appellant Koenigsberg, for collection. An action was thereafter begun in a justice's court to recover on the notes, the complaint alleging that they were given for necessaries.

The respondents, although personally served, defaulted in the action, and a judgment was taken against them for the amount of the notes with interest and costs, the judgment totaling $75.40. The respondent husband was at this time employed by the contracting firm of Teufel & Carlson at a wage of six dollars per day, and at times earned an additional sum by working overtime. After the judgment was obtained, a writ of garnishment was issued on the judgment and served upon the husband's employer. What sum was impounded by the writ, the record does not disclose, but it does appear that the proceeding was settled and dismissed on the payment of $12.50, which was credited on the judgment. Thereafter, on May 5, 1927, May 11, 1927, June 14, 1927, and June 17, 1927, successive writs of garnishment were issued on the judgment and served upon the husband's employer, who made return

thereto to the effect that there were only small sums earned by the husband which remained unpaid, and that these had been assigned to one Fancher. The appellants did not controvert the returns, and in each instance the garnishee was discharged. Subsequently, the appellants caused a duly certified transcript of the judgment to be filed in the office of the county clerk of the county in which the judgment was rendered, and caused a supplemental proceeding to be issued thereon from the superior court of that county. These proceedings were not further prosecuted and were subsequently dismissed.

While we have not ourselves directly passed upon the questions, the courts generally hold that an action will lie for a malicious abuse of lawful process, civil or criminal, and this, although the process is issued upon a valid judgment for a just cause, and is valid in form. Actions of this sort are not so common as are those of a somewhat kindred nature, such as actions for malicious prosecution, wrongful attachment, false imprisonment, and the like, and there seems to be some confusion in the authorities as to the exact scope and nature of the action. Without citing cases —these may be found under the appropriate heads in any of the standard text works—it may be said generally that the abuse of legal process consists of the malicious perversion of a regularly issued process whereby a result is obtained, or sought to be obtained, not properly obtainable under it. Perhaps, the more common instance is where the judgment creditor has sought to sequester wages or property exempt from execution, with the purpose of vexing and harassing the debtor and thus inducing him to pay the debt out of property not legally subject to execution.

In their complaint, the respondents, in addition to

54

the matters alleged by way of inducement, made the following allegations:

"The defendants, well knowing that plaintiffs neither owned or possessed any property or estate and that the principal plaintiff, to wit, Wallace Rock, was a married man with a family dependent upon him, and that he and his family were solely dependent upon his daily labor for their food, clothing, and housing, and that his wages were exempt from execution, never-theless, . . . did corruptly, maliciously enter into a conspiracy to harass . . . the plaintiffs . . . by the malicious use and malicious abuse of the proc-esses of the court, . . . although well knowing that the garnishee had nothing in their possession be-longing to plaintiff, save current wages earned which were exempt from execution. . . .

"That no facts ever existed sufficient to support the issuance of any of the several writs of garnishment, or the order in supplemental proceedings . . . as was at all times known by the defendants, and no facts were ever at any time set forth in any affidavit filed by defendants in support of such writs of garnishment and order in supplementary proceedings sufficient to authorize the issuance of such orders or any of them. . . ."

The complaint, because of these allegations, possibly states a cause of action, but, as we read the record, the evidence falls far short of sustaining the facts alleged. It is conceded, or at least it is not con-tended otherwise, that the proceedings were regular on their face, the judgment on which the garnishments were issued was at all times a valid and subsisting judgment, and that the procedure followed to procure the issuance of the writs was in strict accordance with the statutes. During the period of time involved, the husband was constantly employed. His average earn-ings during the period were $161.73 per month, and, notwithstanding the trial court found to the contrary, these earnings were not entirely exempt. Under ordi-

nary conditions, the respondents could have claimed but $100 per month as exempt, and, since the judgment was founded on actual necessaries furnished the respondents, the exemption was limited to forty dollars per month (Rem. Comp. Stat., § 703). Plainly, any surplus earnings over these exemptions were subject to garnishment.

Nor did the respondents claim in the answers to the several writs that the money sought to be sequestered was exempt from execution. They employed the attorney who prepared the answers to the writs, and he rested his answer of "no funds" solely on the ground that the earnings had been assigned. The evidence, moreover, disclosed that the assignments were not made in good faith; the husband, while on the witness stand as a witness for the respondents, testified that there was no consideration for the assignments, and that they were made for the sole purpose of preventing a possible sequestration of the earnings by garnishment proceedings. The principal evidence in support of the action was that of the respondent wife, who seems to have been the business manager of the community. She told, it is true, a somewhat horrifying story of the deprivations the community and their family had suffered because of the issuance of the writs, but we are afraid her recitals are somewhat exaggerated.

The utmost sum that was recovered by the garnishment proceedings out of the husband's considerable wages was $12.50, and it would seem that the loss of this sum could hardly have caused any serious suffering. Furthermore, the evidence shows that, subsequent to the contraction of the debt, the respondents purchased a home, on which they were making installment payments, and, following the issuance of the first of the writs of garnishment, contracted

to purchase a piano, making a down payment thereon and agreeing to pay the remainder of the purchase price in like installments. The court also found that the reasonable value of the services the respondents employed to resist the garnishment proceedings was fifty dollars, and that the reasonable value "of the appearance of counsel in the superior court in response to the supplemental proceedings is the sum of twenty dollars." Persons able to command these resources are surely not the subjects of want.

The case, as we view it, presents only a too common instance of dishonest debtors endeavoring by dishonest means to escape the payment of an honest debt, and presents none of the elements necessary to sustain an action for a legal abuse of process. In their efforts to defeat payment of the debt, the respondents have so far been successful, although at a cost to themselves far in excess of the sum that would have been required to pay the debt. With this success, they must be content. No principle of law justifies them in making a profit out of their efforts.

The judgment is reversed and the cause remanded with instructions to dismiss the action.