[No. 974-2.   Division Two.   April 22, 1974.]

LESLIE R. FITE, *Appellant,* v. ARTRUDOE L. LEE *et al., Respondents.*

22

*Barry A. Schneiderman* and *Burns & Schneiderman,* for appellant.

*Gordon W. Moss, Lane, Powell, Moss & Miller,* and *Albert R. Malanca,* for respondents.

PEARSON, C.J.—Plaintiff Leslie R. Fite appeals from a judgment of dismissal of his suit claiming abuse of legal process, brought against his former wife Betty J. Fite and the attorneys Artrudoe L. Lee and Thomas C. Lowry, who had represented her in divorce proceedings in 1969.

The divorce decree, entered on April 18, 1969, in Pierce County Superior Court, was affirmed on appeal to this court on December 2, 1970. *Fite v. Fite,* 3 Wn. App. 726, 479 P.2d 560 (1970). After both parties had filed notices of appeal from the settlement provisions of the decree, attorneys for the defendant Betty J. Fite caused garnishment writs to issue against several institutions in which plaintiff held assets. Those writs, the details of which will be more fully explained below, are the basis for the present action.

To frame the issue on appeal it is necessary that we review the rather unusual procedure which culminated in the summary judgments of dismissal in favor of the defendants.

Plaintiff's complaint alleged that on May 19, 1969, while the divorce case was on appeal, defendants caused writs of garnishment to be served on several institutions in which plaintiff had assets, claiming as a basis for the writs that plaintiff presently owed defendant $131,800. Plaintiff alleged (1) that the garnishments were wrongfully issued, (2) that they constituted "malicious prosecution," (3) that the writs were an "abuse of process," and that substantial damages resulted. Defendants answered the complaint by admitting issuance of the writs of garnishment but generally denying all allegations of wrongdoing.

After discovery proceedings were undertaken, defendants moved for a summary judgment pursuant to CR 56. This motion was heard by The Honorable Jay W. Hamilton, sitting in Pierce County as a visiting judge. On January 8, 1971, Judge Hamilton filed a memorandum opinion which was on January 28, 1971, incorporated into an order which granted partial summary judgment to all three defendants. The effect of this order was to dismiss the "wrongful garnishment" and "malicious prosecution" theories, but to deny dismissal of the "abuse of process" theory. Damages for the latter theory were restricted to certain time periods during which the writs of garnishment were in effect.

These rulings are not assigned as error on appeal and we will not consider their propriety. CAROA 43. We assume therefore: (1) that as a matter of law the undisputed facts established that the writs of garnishment were not wrongful in their inception, but were issued pursuant to a valid judgment and upon proper affidavits; (2) that as a matter of law the undisputed facts demonstrated that two of the elements necessary for maintenance of a malicious prosecution as per the trial court's ruling were not established, i.e., (a) want of probable cause, and (b) termination of the garnishment proceedings in plaintiff's favor. See Odom v. Williams, 74 Wn.2d 714, 446 P.2d 335 (1968).

The case came on for trial solely on the "abuse of process" theory. After a jury was impaneled, counsel for the defendant Betty J. Fite renewed her motion for summary

judgment on the remaining theory. At plaintiff's request, the court reserved ruling on the motion until Mrs. Fite's testimony was presented to the jury. This testimony was to the effect that Mrs. Fite did not know the writs of garnishment had been issued, she had not consented to their issuance, nor would she have authorized such action had she been consulted. Before cross-examination of Mrs. Fite was concluded, her motion for summary judgment was renewed.

Counsel for plaintiff Leslie R. Fite stated to the court that he would not argue against the motion, that he had no other testimony to offer in support of his complaint against her, and that Mrs. Fite would not be liable to plaintiff because she lacked knowledge of and gave no consent to issuance of the writs of garnishment.

Counsel for defendants Lee and Lowry likewise stated they had no objection to a grant of the motion, whereupon the trial court stated: "All right, fine, the motion is granted, she is hereby dismissed as a party defendant in this action, however she is required to return tomorrow morning here at 9:30 to complete her testimony."

Immediately thereafter, defendants Lee and Lowry moved for dismissal urging that the dismissal of their former client was res judicata of plaintiff's claim against them. After extensive argument, including a denial of plaintiff's motion to reconsider the dismissal of defendant Betty J. Fite, the trial court concluded that a dismissal of the attorneys was required on principles of res judicata. Judgment of dismissal with prejudice as to all defendants was entered December 15, 1972.

Two assignments of error are raised: (1) the trial court erred in concluding that the dismissal of the client absolved her attorneys on principles of collateral estoppel (res judicata), and (2) it was an abuse of discretion to refuse plaintiff's motion to vacate the oral order dismissing the defendant, Mrs. Fite.

■ We consider the latter assignment of error first. The unusual trial procedures which brought plaintiff's lawsuit

to an abrupt adverse conclusion were explained by the trial court in its findings of fact and conclusions of law. Since the two dismissal orders were in the nature of summary judgments, findings of fact were wholly superfluous. *Washington Optometric Ass'n v. Pierce County*, 73 Wn.2d 445, 438 P.2d 861 (1968); *Sinclair v. Betlach*, 1 Wn. App. 1033, 467 P.2d 344 (1970).

However, certain recitations of fact and explanations of the procedures contained in those findings and conclusions are agreed to by all parties to the appeal and we accept them as stipulated facts. The first such finding was that, with reference to the renewal by defendant Betty J. Fite of her in-trial motion for summary judgment, "all parties waived the procedural requirements of CR 56." Consequently, the parties all agreed that the court could reconsider the motion for summary judgment on the abuse of process theory against Mrs. Fite *after* she had orally testified. We assume from this that Mrs. Fite's oral testimony was to be considered by the trial court in conjunction with all other affidavits and depositions which had been considered in connection with the previous ruling on the motions for summary judgment.

Second, it is clear from these findings and from the supporting records that upon the conclusion of her testimony none of the other parties initially objected to the grant of Mrs. Fite's motion for summary judgment.

In fact, the court specifically asked plaintiff's counsel if he had any further testimony to offer in support of his claim against defendant Betty J. Fite and the response was in the negative. Under these circumstances the trial court was justified in assuming (1) that the cause of action for abuse of process against defendant Betty J. Fite was submitted on the merits for summary judgment purposes, and (2) that all parties consented to the entry of summary judgment on the merits in her favor.

The order of dismissal thereafter entered was in the nature of a judgment by consent, which, in the absence of fraud or mistake or want of jurisdiction, will not be re-

viewed on appeal. *Seely v. Gilbert*, 16 Wn.2d 611, 134 P.2d 710 (1943); *Washington Asphalt Co. v. Harold Kaeser Co.*, 51 Wn.2d 89, 316 P.2d 126, 69 A.L.R.2d 752 (1957).

There is nothing to indicate want of jurisdiction, fraud or mistake, other than perhaps a mistake of law involving the effect the dismissal might have on the action against Mrs. Fite's attorneys. Such a mistake is in our view not sufficient. A judicial admission of liability or nonliability made in open court during trial assumes that the legal consequences of the action are known and understood. Were this not true, the appellate courts would be obliged to review many errors of law which counsel for the parties by agreement caused or persuaded the trial court to make. This would throw great uncertainty on the efficacy of the trial process. *See State ex rel. Eastvold v. Superior Court*, 48 Wn.2d 417, 294 P.2d 418 (1956).

■ Nor do we think an abuse of discretion occurred when the trial court refused to reconsider the oral dismissal. By the time this relief was sought, defendant Betty J. Fite had been orally discharged from the trial (other than as a witness) and her counsel immediately announced his departure from the courtroom when the motion to reconsider the dismissal was made. This kind of change of position made it difficult, if not impossible, for the trial court to effectively reconsider the ruling. In any event, as we shall explain below, it is our opinion that the action was properly dismissed against all the defendants on the basis of the undisputed record of the divorce proceedings.

The specific issue raised and discussed in the briefs is whether or not a stipulated or consent dismissal with prejudice of the abuse of process claim against the client is res judicata of the claim against the attorneys who had issued the process on the client's behalf, but without her knowledge and consent.

The trial court answered the issue in the affirmative. The rationale of the ruling as advanced by respondent is that the dismissal of any claim plaintiff might have against his former wife necessarily included her potential derivative

liability from the acts of her attorneys as her agents in issuing the writs of garnishment. Since the tort liability of a principal and agent is joint and several, the rules relating to joint tort-feasors apply. Consequently, dismissal and discharge of one (the principal) dismisses the others (the agents). *See* Restatement (Second) of Agency § 217 A, Comment on Clause (a) (1958); Restatement of Torts § 885 (1939). *See generally* 46 Am. Jur. 2d *Judgments* § 570 (1969).

This question is one of first impression in Washington. To understand the implications of the ruling, it is necessary that we consider (1) the nature of an action for abuse of process, and (2) the nature of the attorney-client relationship as an agency.

■■ Washington has recognized that a misuse of the garnishment process may constitute an abuse of process. *Rock v. Abrashin,* 154 Wash. 51, 280 P. 740, 65 A.L.R. 1280 (1929).

Restatement of Torts § 682 (1938) defines abuse of process as:

> One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.

It is clear from comment *a* to § 682, Restatement of Torts, *supra,* that an action for abuse of legal process will lie even though there was probable cause for issuance of the process and whether or not the proceedings terminate in plaintiff's favor. Thus it is distinguished from an action for malicious prosecution. *See Williams v. City Stores Co.,* 192 A. 2d 534 (D.C. Ct. App. 1963); *see Ammons v. Jet Credit Sales, Inc.,* 34 Ill. App. 2d 456, 181 N.E. 2d 601 (1962).

The two essential elements for "abuse of process" are (1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings. The mere institution of a legal proceeding even with a malicious motive does not

constitute an abuse of process. *Ammons v. Jet Credit Sales, Inc., supra.*

Generally speaking then, the proper test for abuse of process is whether the process has been used to accomplish some unlawful end, or to compel the adverse party to do some collateral thing which he could not legally be compelled .to do. *Williams v. City Stores Co., supra; Docter v. Riedel,* 96 Wis. 158, 71 N.W. 119 (1897); *see generally* 1 Am. Jur. 2d *Abuse of Process* §§ 21, 22 (Supp. 1973); *see generally* 80 A.L.R. 580 (1932).

Were we to agree that dismissal with prejudice of the client who is without knowledge that her attorney has issued the process on her behalf, is res judicata of the claim against the attorney, we would be required to make two assumptions of doubtful validity: (1) that the attorney-client relationship is an ordinary agency relationship, and (2) that when an attorney does an unlawful act on behalf of his client without the client's knowledge or consent he has implied authority from the client to do so. We cannot accept such assumptions.

An attorney in discharging his professional duties acts in a dual capacity. In a limited or restricted sense he is an agent of his client. But he has powers, including those to issue judicial process, far superior to those of an ordinary agent.

As an officer of the court, his duties are both private and public. Where the duties to his client to afford zealous representation conflict with his duties as an officer of the court to further the administration of justice, the private duty must yield to the public duty. He therefore occupies what might be termed a "quasi-judicial office." *Langen v. Borkowski,* 188 Wis. 277, 301, 206 N.W. 181, 190, 43 A.L.R. 622 (1925); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947); CPE 32.

By its very nature, an abuse of legal process by an attorney as defined above violates an attorney's oath, his canons of ethics, and his duty to the public as an officer of the court. For a recent codification of these principles, *see*

(CPR) DR 2-109; (CPR) DR 7-102; (CPR) EC7-10; CPE 15. (The Canons of Professional Ethics were superseded by the Code of Professional Responsibility on January 1, 1972.)

Accordingly, the scope of the attorney's implied authority as an agent should not, as a matter of law, extend to acts which constitute an abuse of legal process. *See* (CPR) EC 7-7, which provides:

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer.

It follows then that if an attorney has, without the knowledge or consent of his client, abused process to the damage of another, the attorney acts outside the scope of his agency and the client should not be derivatively liable. *See Barton v. Tombari*, 120 Wash. 331, 207 P. 239 (1922); Restatement (Second) of Agency § 228(2) (1958); Restatement (Second) of Agency § 246, comment *b* (1958). Consequently dismissal of the action against the client should not be res judicata of the injured party's claim against the attorneys.

However, we think the undisputed record of the circumstances surrounding issuance of the writs of garnishment furnishes a basis by which the judgments of dismissal must be affirmed. That record shows the following sequence of occurrences under the following undisputed circumstances.

The garnishments were issued on May 19, 1969. In the decree of divorce entered on April 18, 1969, defendant Betty J. Fite was granted a money judgment against plaintiff for $131,800 exclusive of interest. This sum included $120,000 as property settlement, $10,000 as attorney's fees, and $1,800 for accounting fees. The basic award of $120,000 was payable as follows.

[T]he sum of $45,000.00 of which is *immediately due and*

*payable;* the balance to be paid by plaintiff [Leslie R. Fite] in payments of not less than $15,000.00 per year, to be paid on or before the date of the annual anniversary of the Judgment, which balance shall bear interest at the rate of six percent (6%) per annum from the date of this Judgment, on the amounts unpaid; . . ."

(Italics ours.)

As security for the entire sum, the decree required plaintiff to deposit with the clerk of court "upon entry of this Judgment" 50 percent of his stock in Walker Chevrolet Company.

Plaintiff Leslie R. Fite filed notice of appeal from the decree on May 5, 1969, together with a $300 cost bond. No attempt was made to supersede the judgment, nor did plaintiff deposit the Walker Chevrolet Company stock with the clerk of court, as required by the decree.

On May 13, 1969, prior to issuing the garnishments, a motion was filed on behalf of Betty J. Fite seeking an increase in support payments pending appeal; seeking to impound all assets of the parties pending appeal; seeking an order requiring plaintiff to deposit the property awarded to him by the decree, with any investments to be undertaken only with approval of either the defendant or the court, or in the alternative that a supersedeas bond be posted in an amount to be determined by the court.

On May 19, 1969, the trial court entered an order denying defendant's motion to impound assets or to require a supersedeas bond, and on that same day the writs of garnishment were issued on assets alleged to have a value of $500,000.

On May 26, 1969, on plaintiff's motion, the writs were ordered discharged by the trial court. On June 16, 1969, defendant's motion to reconsider dismissal of the writs of garnishment came on for hearing. After extensive argument, the trial judge in the divorce action ordered the writs of garnishment reinstated subject to dismissal only if plaintiff posted a supersedeas bond for $57,000 and deposited 50 percent of the Walker Chevrolet Company stock with the

clerk of court. These conditions were subsequently met and on July 14, 1969, the writs of garnishment were finally discharged.

The gravamen of plaintiff's claim for abuse of process is that the amount of assets garnished was grossly excessive and the process was issued for the ulterior purpose of discouraging the appeal and obtaining favorable negotiations on the issue of interlocutory support and on defendant, Betty J. Fite's, cross-appeal from the divorce. Furthermore, it is claimed that the garnishments were issued for the purpose of discovering additional assets which plaintiff was thought to have concealed from the trial court in the divorce action.

On the undisputed record of events and circumstances surrounding issuance of the writs of garnishment, together with the judicial approval of those writs, we conclude that as a matter of law there was no abuse of process.

In the first place, the garnishments were issued to secure payment of a valid money judgment which was not voluntarily superseded by the appealing party.

■ CAROA 23 provides that an appellant who desires a stay of proceedings on appeal may present to the trial court for its approval a supersedeas bond executed by one or more sufficient sureties. When such a supersedeas bond has been approved and filed, the judgment is effectively stayed. Where no supersedeas bond is filed, the law permits enforcement of the judgment and decree by appropriate process. *Ryan v. Plath,* 18 Wn.2d 839, 140 P.2d 968 (1943).

Furthermore, RCW 26.08.110 vests broad discretion in the trial court pending an appeal in divorce proceedings to protect both parties and secure justice with reference to the settlement provisions of its decree.

On May 26, 1969, and again on June 16, 1969, the trial court considered the very question sought to be litigated in this action, namely, the propriety of the garnishment writs to enforce the terms of the decree. By its order of June 16, 1969, reinstating the writs of garnishment, the court judicially sanctioned the process, directing the conditions upon

which the writs could be discharged. In so doing, the court was acting within the discretion granted by RCW 26.08.110, and was holding, we think, that the writs were neither excessive or improperly motivated.

■ Where process is judicially reviewed and sanctioned, and where the court acts within its statutory authority in sanctioning the process, an action against the attorneys who instituted the process is wholly groundless. *See Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947).

It is true that garnishment of an excessive amount to gain a collateral advantage is an abuse of process. *Farmers Gin Co. v. Ward,* 73 N.M. 405, 389 P.2d 9 (1964); W. Prosser, *Law of Torts,* 857, 858 (4th ed. 1971). However, Prosser views abuse of process as a form of extortion or coercion to obtain a collateral advantage "not properly involved in the proceeding itself  . . ." W. Prosser, *Law of Torts, supra* at 857. We agree with that view and conclude that where the trial court sanctions the process in an exercise of its statutory authority, the process is neither excessive in amount, improperly coercive in nature, nor improperly alien to the proceedings, so as to ground an action for abuse of process.

Accordingly, dismissal of the action against all defendants is affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied June 3, 1974.

Review denied by Supreme Court September 25, 1974.