[No. 3075-0-III. Division Three. March 31, 1981.]

RAYMOND M. BATTEN, JR., ET AL, *Appellants,* v. EDWARD
W. ABRAMS, ET AL, *Respondents.*

*William J. Powell* and *Powell & Harnetiaux,* for appellants.

*Joseph A. Blumel, Backman & Blumel, Patrick Downey, Smith & Donohue, Charles Van Marter, Lukins & Annis, David L. Broom, Paine, Lowe, Coffin, Hamblen & Brooke,*

*Robert Southwell, Malott, Southwell & O'Rourke,* and *Richard D. Mc Williams,* for respondents.

EDGERTON, J.*—The lengthy trial of this case, complicated by its multifarious issues, resulted in a denial of all plaintiffs' many claims and in grants of damages to the respondents on their cross complaint for abuse of process in the total sum of $164,325.79.[1] The plaintiffs have appealed from each and every trial court ruling, finding of fact and conclusion of law and judgment except those made on routine evidence questions.

In summary, these are the facts giving rise to this lawsuit. In January 1954, respondent Dr. Abrams acquired several lots in a then wooded, hilly, unimproved residential area of Spokane; and shortly after, appellant Raymond M. Batten bought and took possession of adjoining land. The Abrams lived only five blocks away from the property and did not take residence there until 1958. From the beginning of his occupancy, Batten encroached on his neighbors' property. (Except for the Mahers, all of the respondents have had ownership interest in lots Abrams originally

---

*Judge Ralph P. Edgerton is serving as a judge pro tempore of the Court of Appeals, pursuant to RCW 2.06.150.

[1]This lawsuit, begun September 1, 1976, brought to trial May 16, 1978, lasted 26 days. Its report of proceedings fills 4,252 pages. Its exhibits consist of maps, drawings, documents, photos and physical objects. On appeal, both sides were represented by competent counsel, but in the trial court the problems of the judge were compounded by the plaintiff's Raymond M. Batten appearing pro se and also representing his wife. He could, of course, properly act for himself, but should not have represented Mrs. Batten. *State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 56–57, 586 P.2d 870 (1978). The evidence disclosed Mr. Batten to be a most litigious person. In undertaking the role of a lawyer, he also assumes the duties and responsibilities and is accountable to the same standards of ethics and legal knowledge. *Hecomovich v. Nielsen,* 10 Wn. App. 563, 571–72, 518 P.2d 1081 (1974). The maxim of Roman law, "ignorantia legis neminem excusat" applies.

bought.)

In 1976, the Abrams and Lelands sued Batten to quiet title to the lands he had infringed upon. He defended, claiming they were his by adverse possession; and by resulting judgment May 20, 1976, he was awarded title to a portion of the land he so claimed. Although Batten had earlier conveyed his real estate to Comstock Investment Corporation to avoid foreclosure of the mortgage it held on his land, he with his family continued to occupy the premises under a lease and he also continued his efforts to extend his holdings by further encroachment on his neighbors' property. By this action begun September 1, 1976, Batten sought to quiet title to such additional land of his neighbors. However, prior to commencement of this suit, these additional things occurred, giving rise to other claims. During the summer of 1976, the Abrams and Lelands had a chain link fence constructed along the boundary of their lots. Plaintiffs claim it was a "spite fence," the result of conspiracy, and by their complaint sought its removal. Batten further asserted that in a meeting June 29, 1976, attended by some respondents, appellants and others, Dr. Abrams said he was constructing the fence because Batten had "stolen" his property and to prevent his stealing more. This was the basis for his claim of defamation against Dr. Abrams and demand for compensatory damages therefor.

During the late summer of 1976, appellant Batten first met respondent Maher. Maher objected to Batten's use of an unpaved portion of Overbluff Road in the vicinity and subsequently he and others petitioned the Spokane City Council to have it vacated. In support of his petition before the council and again in the superior court hearing to enjoin the vacation of the road, Maher made statements that Batten avers were defamatory. So, in his complaint Batten included a claim of slander and libel against Maher.

In the spring of 1976, Dr. MacDuff, who planned to build a home on his lot, visited the premises and discovered Batten was using and claiming a portion. July 2, 1976, a lawyer representing MacDuff and Brown wrote Batten that his

uses of MacDuff's property had been permissive, that such usage would no longer be allowed, and if persisted in would result in "taking such action as was necessary." MacDuff accused Batten of ignoring his "no trespass" signs and finally one of their confrontations ended in an altercation for which the police were called. Thereafter, on MacDuff's complaint, Batten was charged with second degree trespass, tried and convicted in district court and on appeal in the superior court. On appeal to this court his conviction was reversed. *State v. Batten*, 20 Wn. App. 77, 578 P.2d 896 (1978). From this series of events arose appellants' malicious prosecution claim in the amended complaint.

Following pretrial maneuvering and discovery procedures, the case was tried on an amended complaint by which plaintiffs sought to quiet title to a portion of alleged Brown/MacDuff property, an easement by prescription or implication across land of the same respondents, and abatement and removal of the alleged "spite fence." They further claimed damages for property destruction, harassment, slander and libel, and allegedly unfounded complaints to the police to deny plaintiffs their civil rights.

Defendants, respondents here, entered general denials and counterclaimed for damages for alleged malicious prosecution and abuse of process. At the close of plaintiffs' case, claims against the Carmens and Browns were dismissed with prejudice; and at the conclusion of the trial plaintiffs' complaint was dismissed with prejudice as to all other defendants and damages and attorneys' fees awarded them.

Appellants make 9 assignments of error, including all 20 of the trial judge's findings of fact as one, all 19 of his conclusions of law as another, and his oral opinion made a finding by reference. Of appellants' multitudinous assignments of error, not all are argued or reinforced by precedents. Those of appellants' assignments of error not specifically supported by argument or citation of authority will not be considered here. Having failed to present these questions properly on appeal, they are not before us. *State v. Wood*, 89 Wn.2d 97, 99, 569 P.2d 1148 (1977).

## IMPOSITION OF TERMS

Appellants claim that it was error for the trial judge to grant terms against them for Batten's failure to timely answer to interrogatories posed him by respondents Abrams and Carmen who moved for the imposition of $200 terms. Prior to the hearing on that motion, the answers were served on respondents' counsel. The court said: "There was some violation of the rules but some excuse," and allowed $100. On appeal, appellants point to the Spokane County Superior Court Local Rule 77(k)–2(d) then in effect which provided:

> The Court will not entertain any Motion or objection with respect to Rules 26, 27, 30, 31, 33, 34, 35 or 36, Civil Rules for Superior Court, unless it affirmatively appears that counsel have met and conferred with respect thereto. Counsel for the moving or objecting party shall arrange such a conference.

Since respondents had not complied with this rule, and since the purpose of the rule was simply to obtain compliance with the requests for answers to interrogatories without the necessity of a hearing, and since that purpose had been accomplished when the appellant answered the interrogatories well in advance of his hearing, appellants claim the court could not rightfully impose terms. We agree.

 This local rule, like the civil rules of superior court, has the force and effect of statutory law and consequently its being overlooked invalidates the order granting terms. Respondents contend the trial court's failure to observe the rule cannot properly be raised for the first time on appeal. They are mistaken. *Gross v. Lynnwood,* 90 Wn.2d 395, 397, 583 P.2d 1197, 96 A.L.R.3d 187 (1978), supports our conclusion announcing, "It is the general rule that public statutes of Washington State will be judicially noticed by all courts of this state." Further, the Supreme Court said in that same case, at page 400:

> A party may raise failure to establish facts upon which relief can be granted for the first time in the appellate court. RAP 2.5(a)(2).

Thus, appellants are not precluded from raising here respondents' failure to comply with local rule of court 77(k)–2 and the trial court's failure to take notice of the rule.

Again, terms of $50 in favor of each of two other respondents were imposed for a similar infraction of the rules of discovery. This, too, was governed by local rule 77(k)–2. Again, it was not complied with and although raised in the trial court, it was disregarded. This too, then, was error and both orders granting terms, preliminary to the trial on the merits, are reversed.

### JURY REQUEST

The denial of Batten's demand for a jury trial is assigned as error. When both law and equity issues exist in a lawsuit, a trial court has wide discretion in granting or denying a jury trial. The list of appellants' claims clearly demonstrates equitable relief to be sought as well as damages at law. There was no abuse of discretion in the rejection of the jury demand. *Thompson v. Butler,* 4 Wn. App. 452, 454–55, 482 P.2d 791 (1971).

### CHALLENGE TO COURT'S FINDINGS OF FACT

The Battens' assignments of error relating to their claims to a strip of Dr. MacDuff's property and easement by implication or prescription, removal of the alleged "spite fence", and damages from the alleged civil conspiracy, malicious prosecution and defamation are only challenges to the court's findings of fact. After a thorough review of the numerous exhibits and 4,252 pages of transcript, we find the court's findings are supported by substantial, although conflicting, evidence. They will not be disturbed. *In re Estate of Martinson,* 29 Wn.2d 912, 920–21, 190 P.2d 96 (1948); *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 368, 617 P.2d 704 (1980).

## RESPONDENTS COUNTERCLAIM FOR
## MALICIOUS PROSECUTION

Appellants assert it was error for the trial court to find them guilty of malicious prosecution and to make an award of damages therefor.[2] Respondents' counterclaim for damages was based on RCW 4.24.350 which permits a counterclaim for malicious prosecution or abuse of process in an action for damages. However, the elements essential to a successful action for malicious prosecution, set forth many times, were repeated in *Gem Trading Co. v. Cudahy Corp.*, 22 Wn. App. 278, 284, 588 P.2d 1222 (1978). There, it was held that the statute does not eliminate the common law requirement that to constitute malicious prosecution there must be either an arrest or seizure of property. The evidence reveals neither arrest nor seizure; so there could be no malicious prosecution defense, and the trial court erred in finding there was.[3] Moreover, the court did not enter a finding concerning arrest or seizure of property. The absence of a finding on a material issue is presumptively a negative finding entered against the party bearing the burden of proof on that issue. *Tacoma Commercial Bank v. Elmore,* 18 Wn. App. 775, 778, 573 P.2d 798 (1977); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 356, 467 P.2d 868 (1970). Presumably, then, the court found there was no arrest and no seizure of property and it erred in awarding damages on the malicious prosecution counterclaim.

## ABUSE OF PROCESS

The trial court found appellants guilty of committing the tort of abuse of process as alleged by respondents and further justified the award of damages on this ground. Appel-

---

[2]Appellants also challenge the constitutionality of RCW 4.24.350 which allows the malicious prosecution counterclaim. It is not necessary to consider this assertion in view of our decision.

[3]In fairness to the trial court, we note that *Gem Trading Co. v. Cudahy Corp., supra,* was decided after the judgment against Batten was entered. On review, at 92 Wn.2d 956, 603 P.2d 828 (1979), our Supreme Court affirmed this decision, holding RCW 4.24.350 was not applicable.

lants maintain this also to be error; so the final question in this case is: Was there an abuse of process on the part of the appellants Batten?

The Supreme Court of Washington has said, "In abuse of process cases, the crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end." *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 963 n.2, 603 P.2d 828 (1979). The Court of Appeals stated the essential elements of abuse of process to be

> (1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process— and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings. *The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.*

(Italics ours.) *Fite v. Lee,* 11 Wn. App. 21, 27–28, 521 P.2d 964 (1974); *R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wn. App. 290, 612 P.2d 456 (1980). In *Fite,* the court also cites and relies on *Hoppe v. Klapperich,* 224 Minn. 224, 231, 28 N.W.2d 780 (1947), which defines the tort in the same language as the *Fite* case and further states:

> The gist of the action is the misuse or misapplication of the process, *after it has once been issued,* for an end other than that which it was designed to accomplish. Prosser, Torts, § 98; 1 Cooley, Torts (4 Ed.) § 131, p. 437; Annotation, 80 A. L. R. 580; Restatement, Torts, § 682; cf. Restatement, Torts, § 136(b), *comment c.*

The great majority of legal authorities concur with the foregoing definition of the tort and its essential elements that it is a matter of bringing action A to accomplish purpose B. W. Prosser, *Torts* § 121, at 856–58 (4th ed. 1971), defines it:

> *[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it*

*is issued, is the only thing of importance. . . .*

The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. *Some definite act or . . . objective not legitimate in the use of* the process, is required; and there is no liability *where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.* The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort. The cases have involved such extortion by means of attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt. The ulterior motive or purpose may be inferred from what is said or done about the process, *but the improper act may not be inferred from the motive.*

(Footnotes omitted. Italics ours.) The writers of 1 Am. Jur. 2d *Abuse of Process* § 4, at 253 (1962), in summarizing the decided law, state it this way:

An ulterior motive or a bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, for it is the latter which is the gist of the action. An action for abuse of process cannot be maintained where the process was employed to perform no other function than that intended by law. Thus the mere issuance of process is not actionable as an abuse of process; there must be use of the process, and that use must of itself be without the scope of the process, and hence improper. Or stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly

be compelled to do.

(Footnotes omitted.) These cases support the foregoing statement of the law of abuse of process: *Italian Star Line, Inc. v. United States Shipping Bd. Emergency Fleet Corp.*, 53 F.2d 359, 80 A.L.R. 576 (2d Cir. 1931); *Slaff v. Slaff*, 151 F. Supp. 124 (S.D.N.Y. 1957); *Pimentel v. Houk*, 101 Cal. App. 2d 884, 226 P.2d 739 (1951); *Tellefsen v. Key Sys. Transit Lines*, 198 Cal. App. 2d 611, 615, 17 Cal. Rptr. 919 (1962); *Geier v. Jordan*, 107 A.2d 440 (D.C. App. 1954); *Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781 (D.C. App. 1957); *Mini–Togs, Inc. v. Young*, 354 So. 2d 1389 (La. App. 1978); *Noyes v. Shanahan*, 325 Mass. 601, 604–05, 91 N.E.2d 841, 844 (1950); *Bigelow v. Galway*, 281 N.W.2d 835 (Minn. 1978); *Edmonds v. Delta Democrat Publishing Co.*, 230 Miss. 583, 93 So. 2d 171 (1957); *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591 (Mo. 1955); *Jenkins v. Andrews*, 526 S.W.2d 369 (Mo. App. 1975); *Hoppe v. Klapperich, supra.*[4]

---

[4]Cases in which abuse of process was found:

*Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal. 3d 94, 496 P.2d 817, 101 Cal. Rptr. 745 (1972). Held: It is abuse of process for a collection agency to willfully and knowingly file lawsuits in improper counties, pursuant to statutorily inadequate complaints, for the ulterior purpose of impairing its adversaries' ability to defend these actions and with the intent, and effect, of obtaining an increased number of default judgments and to coerce the parties into making inequitable settlements.

*Templeton Feed & Grain v. Ralston Purina Co.*, 69 Cal. 2d 461, 446 P.2d 152, 72 Cal. Rptr. 344 (1968). Held: It is abuse of process for mortgagee of turkeys to procure their seizure, where it knew or should have known it was not entitled to possession of the turkeys in order to force the payment of another's debt.

*Board of Educ. v. Farmingdale Classroom Teachers Ass'n, Local 1889*, 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975). Held: Complaint stating that attorney for teachers' association issued judicial subpoena duces tecum to 87 teachers in order to compel their attendance as witnesses before the public employees' relations board and refused school district's request that majority of teachers be excused from attendance at the initial hearing date and refused to grant request to stagger the appearances, with result that 77 substitute teachers were hired to replace the subpoenaed teachers, stated cause of action for abuse of process.

*Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 503 P.2d 9 (1972). Held: Where property valued at over $30,000 was placed under attachment to secure alleged debt of less than $5,000 and was attached in its entirety even

██ It is clear from these cases that regularity or irregularity of the initial process is irrelevant. The tort goes to use of the process once it has been issued for an end for which it was not designed. Thus, there must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit.

In this case, the only process issued was the summons, a notice to defendants to appear and respond to plaintiffs' complaint. That was the proper means for bringing the parties and their disputes before a tribunal for a judicial determination of their rights and obligations. For that purpose it was a correct use of that process and the only one used or requested in the case. The court's conclusion that

---

though it was divisible, and where efforts to release parts of the property were summarily rejected even though parties who had sought the attachment possessed full knowledge of devastating effect of the attachment upon attachee's mining business in which he used the attached machinery, such parties' actions constituted adequate grounds for conclusions that the attachment had purpose of pressuring payment rather than securing a debt and constituted a misapplication of process causing compensable damage.

Additional cases where abuse of process was not found:

*Seidner v. 1551 Greenfield Owners Ass'n,* 108 Cal. App. 3d 895, 166 Cal. Rptr. 803 (1980). Held: Filing of second lawsuit on basis of different legal theory without intent or attempt to interfere with defendant's ability to proceed with first action is not abuse of process.

In this case, the court said at page 808:

Appellant would have us believe that the filing of the corporate lawsuit in the action before us is of such a significant posture that a threat, or collateral advantage is to be ascribed to those parties. . . . What, if anything else, did the respondents as defendants do except file its lawsuit? Is it not true that in any lawsuit there is a[n] element of threat or coercion? . . . If he feels pressure, that may be his subjective feelings or thoughts. If he does not wish to settle, it is doubtful if any further lawsuits will cause him to want to settle.

*Ion Equip. Corp. v. Nelson,* 110 Cal. App. 3d 868, 168 Cal. Rptr. 361 (1980). Held: Pleadings indicating that defendants' motive in issuing writ of execution during stay of enforcement pending appeal was to attempt to collect unsatisfied judgment did not establish ulterior motive or willful misuse of process as required for recovery for abuse of process.

*Cartwright v. Wexler, Wexler & Heller, Ltd.,* 53 Ill. App. 3d 983, 369 N.E.2d 185 (1977); *Hertz Corp. v. Paloni,* 95 N.M. 212, 619 P.2d 1256 (1980); *Larsen v. Credit Bureau, Inc.,* 279 Ore. 405, 568 P.2d 657 (1977); *Rondelli v. County of Pima,* 120 Ariz. 483, 586 P.2d 1295 (1978); *Holiday Magic, Inc. v. Scott,* 4 Ill. App. 3d 962, 282 N.E.2d 452 (1972).

abuse of process existed here was based on its findings that appellant Batten manufactured evidence "over a period of time" before trial in an attempt to deceive, mislead, and thereby perpetuate a fraud upon the court with the goal of vexing, harassing, and intimidating neighbors and others for acquiring real property and money damages.

The specific claimed purposes that the court cited as ulterior were (a) to cause removal of the Abrams/Leland fence so he (Batten) could encroach on their property; (b) to prevent construction of Dr. MacDuff's house by claiming an easement; and (c) to coerce the respondents into meeting certain demands, although they were based on groundless or frivolous claims. The evidence does not substantiate these findings. If appellant Batten did manufacture evidence, the apparent purpose was to buttress his case. He claimed that the fence was a "spite fence" and eyesore (which claim the court denied); but evidence that he desired it removed for an ulterior reason is lacking. Nor is there evidence that he sought an easement (an alternative of two routes) to block construction of the MacDuff home. Even if his claims were groundless, bringing the lawsuit based upon those claims does not establish an ulterior motive.

> [T]he initiation of vexatious civil proceedings known to be groundless is not abuse of process . . .

52 Am. Jur. 2d *Malicious Prosecution* § 2, at 187 (1970). Assuming without conceding, however, that an ulterior motive was shown, even then the bringing of a baseless lawsuit will not establish the act that is the essential element of abuse of process. A review of the cases cited above makes it clear that the great majority of courts would find that filing a lawsuit, although baseless or vexatious, is not misusing process. There is no liability if nothing is done with the lawsuit other than carrying it to its regular conclusion.

A sound basis for abiding by the rule enunciated above was first stated by the Washington Supreme Court in

*Abbott v. Thorne,* 34 Wash. 692, 694–95, 76 P. 302 (1904). The court there said:

> Courts are instituted to grant relief to litigants, and are open to all who seek remedies for injuries sustained; and unnecessary restraint, and fear of disastrous results in some succeeding litigation, ought not to hamper the litigant or intimidate him from fully and fearlessly presenting his case.

That this remains our law was reiterated with approval in *Petrich v. McDonald,* 44 Wn.2d 211, 217, 266 P.2d 1047 (1954). Clearly, the cases bespeak a policy which favors allowing the plaintiff his day in court. The assumption is that any wrong will be resolved by carrying the suit to its conclusion and that a different principle would be fraught with grave danger. There is the risk that if abuse of process is not limited to an act subsequent to filing suit, to irregular steps taken under cover of process after its issuance, that it may be based on subjective intent only and that as a result be included as a counterclaim in nearly every answer. So far as the record goes in this case, all plaintiffs did or sought was to press their claims to conclusion by trial, which claims the trial court denied.

Respondents have not proved a case of abuse of process. The trial court erred in holding that they did and in granting them judgment.

Accordingly, judgments for damages and attorney's fees are reversed. The terms heretofore paid by appellants to respondents herein disallowed should be applied on respondents' statutory attorneys' fees and costs due respondents in superior court. In all other respects, the trial court's decision is affirmed. Respondents' request for attorney's fees on appeal are denied and on the appeal the parties shall bear their own costs.

GREEN and MUNSON, JJ., concur.

Reconsideration denied June 9, 1981.

Review denied by Supreme Court September 3, 1981.