FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 57

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PAUL SALVAGE and THERESA BACON, and the marital community thereof; | No. 43954-9-II |
| Appellants, | |
| v. | |
| GEIGER PHARMACY, a business operating in the state of Washington; and ROBERT GEIGER, as an individual; | UNPUBLISHED OPINION |
| Respondents. | |

PENOYAR, J. — Paul Salvage appeals the trial court's order dismissing his medical negligence claim against pharmacist Paul Geiger and Geiger Pharmacy (collectively referred to as Geiger) on summary judgment. Salvage contends that the trial court erred when it denied his request for a continuance and ruled that he had not met his burden of proof. Because Salvage did not have a good reason for the delay in obtaining the proper evidence and did not establish a prima facie case of medical negligence, we affirm.

## FACTS

On February 26, 2010, Salvage filed suit against Geiger, alleging that Geiger improperly filled his methadone prescription and thereby caused a single-car accident on March 16, 2007, in which Salvage was injured. On September 28, 2010, Geiger submitted interrogatories and a request for production of documents. After the attorney who filed the complaint withdrew, Salvage proceeded pro se.

On January 11, 2011, Geiger sent Salvage a letter asking that the discovery be answered and setting a CR 26(i) conference.[1] After Salvage sent partial answers by e-mail, Geiger sent him a letter on February 9, 2012, asking for full answers to the interrogatories and the request for production. Although Geiger extended the response deadline several times, Salvage did not comply with the extensions and missed a CR 26(i) conference. Geiger then filed a motion to compel discovery, and the trial court ordered Salvage to provide all discovery responses by May 15, 2012.

In response to an interrogatory asking him to identify all experts he planned to call at trial, Salvage identified two people who repaired his vehicle, the physician who referred him for x-rays on his shoulder, the orthopedic surgeon who examined his shoulder, the surgeon who operated on his shoulder, and Dr. Stephen Kramp, the physician he consulted following the accident about his methadone use and his injured shoulder. Referring to Dr. Kramp, Salvage disclosed the following:

> I made an appointment soon after the accident and described the medication that Geiger Pharmacy had given me. I told him at the time that I was cutting back to the original prescription he prescribed. Six months later or thereabouts we made a decision that it might be a good time to stop the methadone and go to a lesser narcotic. He worked with me on this. Three to four weeks after stopping the methadone my right shoulder was very painful. At the time I had no insurance so we ordered an MRI on my right shoulder which showed blunt force trauma. In January 2008 my wife put me on her insurance policy so we could go forward and get the shoulder repaired. I still have problems with the shoulder and fear I may have to have another surgery.

Clerk's Papers (CP) at 48. In response to a request for production asking for copies of all documents and tangible evidence not previously produced that pertained to his answers to

---

[1] CR 26(i) requires counsel to confer about a pending discovery motion or objection before the court entertains it.

2

previous interrogatories, Salvage responded that his former attorney "may have some." CP at 92.

On July 2, 2012, Geiger moved for summary judgment. Geiger argued that in order to claim medical negligence, Salvage had to show through expert testimony that the applicable standard of care had been violated and that the violation caused his injuries. Because Salvage had identified no expert who could so testify, Geiger argued that Salvage had failed to establish a prima facie case of medical negligence. The summary judgment hearing, originally noted for August 3, 2012, was renoted to August 10 at Salvage's request.

On July 30, 2012, Salvage filed a response to the motion for summary judgment and a responding declaration. He argued that no expert witness was required to address the standard of care issue because the negligence was apparent on its face. Salvage acknowledged that he needed an expert to address causation, however, and he requested an additional two weeks to obtain the necessary affidavit. On August 3, Geiger filed a reply to Salvage's response and submitted a supplemental declaration.

On August 7, Salvage informed Geiger by phone that he had in his possession (1) pill bottles from April and May 2007, (2) the prescription for methadone from Dr. Kramp, (3) a statement from Dr. Kramp indicating that the 2007 accident occurred because the pharmacist doubled the methadone prescription, (4) "documentation" from Geiger Pharmacy, and (5) a compact disc with Dr. Kramp's notes. CP 132, 150. Salvage admitted that he had possessed but not disclosed the documentary evidence before the court-imposed discovery deadline of May 15, 2012.

On August 8, he faxed one page of his medical records and a printout of prescriptions to Geiger. While the parties were waiting for the August 10 hearing to be called, Salvage showed

the supposed prescription bottles, which he had obtained from his former attorney on August 6, to Geiger's attorney. The court struck the summary judgment hearing because Geiger had not confirmed it, and the hearing was renoted and confirmed for August 17, 2012, along with Geiger's motion to dismiss for failure to comply with the discovery order.

At the beginning of the August 17 hearing, the trial court cautioned the pro se Salvage that he would be held to the same standards as an attorney. Salvage responded that he had been working with an attorney but did not expect him to appear until the matter went to trial. After asking for a continuance of the summary judgment hearing, Salvage began to address the discovery motion. The trial court explained the two motions at issue and asked Salvage whether he had any legal reason to continue the summary judgment motion. The following exchange occurred:

> MR. SALVAGE: The summary judgment is, explain one more time, Your Honor, please.
> [TRIAL COURT]: The defendant's position is that you've not produced any competent evidence.
> MR. SALVAGE: No. I have no reason to continue that.
> [TRIAL COURT]: All right. So we'll go forward with that today, but you're asking for a continuance of the discovery—
> MR. SALVAGE: Right, yes, Your Honor.

Report of Proceedings (RP) at 7-8. After further argument on the discovery motion, the trial court declined to continue it and turned to the summary judgment motion.

Geiger argued that Salvage had not identified any expert to testify about the alleged standard of care violation or causation. In fact, Salvage had produced no evidence whatsoever: "We've had his interrogatory responses and that's it. No documents, no medical records, no nothing has been produced by the plaintiff on this case." RP at 14.

4

Salvage responded that no expert testimony was required to show Geiger's violation of the standard of care and that on July 30 he had requested a two-week continuance to consult a doctor. He said he had an appointment on August 30 with a doctor at Peninsula Pain Clinic and would get a letter at that time. When the court asked Salvage whether he had an expert declaration from a pharmacist stating that the alleged breach was the cause of his injury, Salvage admitted that he did not. Salvage then requested a continuance to talk to a pharmacist. Salvage added that he had medical records showing Dr. Kramp's entry regarding the cause of his accident, but he had no copies to show the court even though he received the disc containing those records on May 30.

Geiger responded that Salvage had presented no evidence that he had a prescription with Geiger Pharmacy, let alone an overprescription for methadone. Geiger pointed out that Salvage had stated that he had medical records on May 30 but had failed to provide the court with a copy in response to the motion for summary judgment filed on June 29.

When the court granted Geiger's motion because of Salvage's failure to produce competent evidence, Salvage responded that he had "none of this evidence." RP at 24. He asked for a continuance so he could speak with his attorney, adding that he had paid the attorney more than $2,000 and expected him to be at the hearing. Salvage complained that he had not been granted the continuance he had originally requested. The trial court informed Salvage that he could consult with his attorney and seek reconsideration but that it would sign the proposed order dismissing his case for failure to provide evidence showing genuine issues of material fact on the applicable standard of care and causation.

Salvage now appeals the order dismissing his complaint on summary judgment.

ANALYSIS

I.   CONTINUANCE

Salvage argues that the trial court erred when it denied his request to continue the summary judgment motion so that he could secure an affidavit from a pharmacist and obtain the assistance of the attorney to whom he had paid $2,000.

We review a ruling denying a motion for a continuance to determine whether that ruling was manifestly unreasonable or based on untenable grounds or reasons. *Coggle v. Snow*, 56 Wn. App. 499, 504, 784 P.2d 554 (1990). The trial court may deny a motion for continuance where (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of fact. *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003).

Salvage represented himself at the summary judgment hearing after explaining to the court that he had been working with an attorney who had just returned from vacation, "so his calendar restricts him from appearing." RP at 4. Salvage added that the attorney had not filed a notice of appearance and would not appear for him formally unless the matter went to trial. Salvage then explained that he was ready to proceed with the summary judgment motion but wanted to continue the discovery motion. Salvage did not request a continuance of the summary judgment motion until his lack of success in defeating that motion became apparent.

Although Salvage represented himself, he was held to the same standard as an attorney. *Batten v. Abrams*, 28 Wn. App. 737, 739 n.1, 626 P.2d 984 (1981). Salvage recognized that he needed an expert's affidavit when he responded to the summary judgment motion on July 30, and he asked for a two-week continuance to obtain the affidavit. At the August 17 hearing,

6

Salvage said he hoped to have an affidavit by August 30. Even though he claimed to have had a disc with additional evidence since May 30, he had none of that evidence to show the court on August 17. After the trial court granted Geiger's motion and dismissed the case, Salvage asked again for a continuance so he could talk to his attorney, who "was supposed to be here today." RP at 25. He had said earlier that his attorney could not attend the hearing. We see nothing unreasonable in the court's refusal to grant Salvage a continuance because he did not offer a good reason for the delay in obtaining the necessary evidence.

Salvage also argues that he did not have sufficient time to respond to the summary judgment motion because he had only three days to address Geiger's supplemental declaration before the hearing. Geiger filed its reply to Salvage's response and its supplemental declaration on August 3, in full compliance with CR 56(c), which states that the moving party may file any rebuttal documents no later than five calendar days before the hearing, which in this case occurred on August 17. The trial court did not err when it declined to continue the summary judgment hearing.

## II. SUMMARY JUDGMENT

Salvage argues here that the trial court erred when it granted Geiger's motion for summary judgment because he did not need an expert to testify about the alleged standard of care violation.

We review a grant of summary judgment de novo, and engage in the same inquiry as the trial court. *Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 611, 15 P.3d 210 (2001). Summary judgment is appropriate if the record before the court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 491, 183 P.3d 283 (2008). We may

7

affirm a trial court's disposition of a summary judgment motion on any basis the record supports. *Davies*, 144 Wn. App. at 491.

To prevail on a claim of medical negligence, the plaintiff must prove that the defendant "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances" and "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040(1), (2).

A defendant moving for summary judgment in a medical negligence case bears the initial burden of showing that there is no genuine issue of material fact or that the plaintiff lacks competent evidence to support an essential element of his claim. *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). If the defendant shows that the plaintiff lacks sufficient evidence to support his case, the burden shifts to the plaintiff to produce evidence that supports a reasonable inference that the defendant was negligent. *Seybold*, 105 Wn. App. at 676. The plaintiff must respond with affidavits or other documents setting forth specific facts showing that there is a genuine issue for trial. CR 56(e); *Seybold*, 105 Wn. App. at 676. In a medical negligence case, expert testimony is generally required to establish the standard of care and to prove causation. *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983); *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

Salvage contends that this case falls within the exception to the expert testimony requirement because Geiger's negligence was so apparent that a layperson would have no difficulty in recognizing it. *See Ripley v. Lanzer*, 152 Wn. App. 296, 318, 215 P.3d 1020 (2009) (no expert testimony required to raise inference of negligence where surgeon left scalpel blade in patient's knee). We need not decide whether this exception applies here, however, because

Salvage failed to produce any competent evidence whatsoever to support his claim of negligence. Salvage produced no declaration or documentation showing that he had a prescription for methadone, that Geiger filled it incorrectly, and that the improper prescription led to the accident that caused his injuries. The trial court correctly observed that "[a]s the record stands before me today, you have not met your burden of proof at all." RP at 24. Although Salvage now describes this deficiency as a technicality, we view it as dispositive. We affirm the trial court's order granting Geiger summary judgment and dismissing Salvage's complaint.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.

9