[No. 12023–9–I. Division One. December 17, 1984.]

DONALD E. SPENCER, ET AL, *Appellants,* v. KING
COUNTY, ET AL, *Respondents.*

*Richard B. Sanders, Arthur D. Swanson,* and *Todd Gardner,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Charles S. Hamilton III, Deputy,* for respondents.

DURHAM, C.J.—Donald E. Spencer appeals from an order granting partial summary judgment and voluntary dismissal of remaining causes entered in this action against King County, Helmuth Fichtler and Michael Connolly. Spencer contends that there are genuine issues of material fact which made summary judgment improper.

On October 4, 1979, respondent Helmuth Fichtler, a King County mental health professional, went to the home of Donald Spencer to observe and interview him to determine if he was in need of mental health treatment. Fichtler's decision to contact Spencer was based upon an affidavit obtained from Spencer's daughter, Elayne, on October 3. In

her affidavit, Elayne Spencer indicated that Spencer had become severely distraught over the tragic murder of another daughter. She stated that Spencer had exhibited emotional problems in the past, by threatening an Internal Revenue Service agent with a club and boasting of his ability to set others on fire by igniting cans of carbon dioxide. She indicated that Spencer had become obsessed with gaining revenge against the boy that murdered his daughter, the boy's father, Marvin Halland, and a local past school counselor. Elayne further stated that Spencer had spoken with her only a few days earlier about killing generally and the circumstances surrounding violent death. She said that Spencer threatened to hold Halland accountable for his daughter's death, and that he had threatened to get "rid of" the school counselor. Elayne stated that she believed that Spencer intended to commit acts of violence against these individuals.

Fichtler was accompanied to the Spencer residence by respondent Michael Connolly, a sergeant with the King County Department of Public Safety, and Officer Craig Sarver. Fichtler requested Connolly's assistance because of the nature of Spencer's alleged mental problems and because he had received information that weapons were on the premises. Upon their arrival, Spencer appeared "thin, unshaven, with sunken eyes and a nervous facial tic." Fichtler read Spencer his *Miranda* rights, and attempted to explain the purpose of his visit. Spencer became highly agitated, and placed his hands over his ears and his head between his knees. Spencer refused to listen to Fichtler, and started toward the door screaming that Fichtler was part of a murder plot. Fichtler told Connolly and Officer Sarver to detain Spencer, who had to be carried out the door because he refused to walk. Spencer continued to scream, claiming that Fichtler and Connolly were kidnappers and part of a conspiracy. While outside, the police scuffled with Spencer's son, Terry, who was attempting to interfere with Spencer's detention. Spencer became increasingly aggressive, kicking Fichtler and siccing his dog

on him. Spencer was handcuffed during this process. Spencer's wife, Rubie, arrived at the scene after Spencer had been handcuffed, but no scuffle occurred in her presence. Spencer was taken by ambulance to Harborview Hospital for 3 days of psychiatric evaluation, and was released at the end of that period.

On November 24, 1980, the Spencers brought this action against King County, Fichtler and Connolly. The complaint alleged numerous state law causes of action, including trespass, assault, battery, false arrest, false imprisonment, outrage, negligence in employee selection, and interference with a family relationship. The complaint also included a cause of action for damages under 42 U.S.C. § 1983, based upon the respondents' alleged deprivation of Spencer's right to due process and equal protection. Finally, the complaint generally alleged the unconstitutionality of the Washington involuntary commitment laws.

On July 15, 1982, the trial court granted respondents' motion for summary judgment as to all causes of action except the trespass, assault and battery claims,[1] and denied appellants' motion for reconsideration. This appeal followed.

STATE LAW CLAIMS

The principal issue on appeal is if King County and the individual defendants are immune from tort liability under RCW 71.05.120, which states:

> Exemptions from liability. No officer of a public or private agency, nor the superintendent, professional person in charge, his professional designee, or attending staff of any such agency, nor any public official performing functions necessary to the administration of this chapter, nor peace officer responsible for detaining a person pursuant to this chapter, nor any county designated mental health professional shall be civilly or criminally liable for performing his duties pursuant to this chapter with

---

[1]These claims were voluntarily dismissed. However, the court preserved appellants' right to raise them anew should they prevail on appeal. Appellants conceded that there was no genuine issue of fact as to the negligence in employee selection claim. The "interference with a family relationship" claim appears to have been dropped.

regard to the decision of whether to admit, release, or detain a person for evaluation and treatment: *Provided,* That such duties were performed in good faith and without gross negligence.

■ Spencer first argues that under the proviso appearing at the end of the statute, immunity is negated by a showing that the individual defendants acted *either* with gross negligence or in bad faith. We agree. The statute sets forth a general rule of immunity, conditioned on the mental health professional performing his duties "in good faith *and* without gross negligence." (Italics ours.) RCW 71.05.120. Since the immunity depends upon the absence of both gross negligence and bad faith, the immunity is lost upon a showing that either exists.[2]

Spencer next contends that summary judgment was improper because a genuine issue of fact exists as to Fichtler's alleged gross negligence or bad faith.

The exception to the immunity statute under which Spencer seeks to impose liability applies when there has been gross negligence or bad faith "with regard to the decision of whether to admit, release, or detain a person for evaluation and treatment . . .". RCW 71.05.120. Therefore, Fichtler's conduct must be judged in light of his duties under the involuntary commitment laws, RCW 71.05.010 *et seq.*

RCW 71.05.150(1) and (2) describe two procedures under which a mentally ill person may be involuntarily committed. Subsection 1 is inapplicable here.[3] Under subsection 2, the provision invoked by Fichtler, an individual may be

---

[2]The County argues that Spencer, in asserting that he need not prove both gross negligence and bad faith, has asserted a new legal theory on appeal. This is incorrect. Although Spencer took the position that both gross negligence and bad faith were in fact present, Spencer did not concede that it was necessary to prove both.

[3]Subsection 1 provides that an individual may be summoned to appear for 72 hours of evaluation and treatment if a mental health professional receives information alleging that the individual "presents a likelihood of serious harm to others or himself . . .". RCW 71.05.150(1)(a). If the individual does not voluntarily appear within 24 hours as outlined in the summons, he may be involuntarily committed. RCW 71.05.150(1)(b).

taken into emergency custody without a summons if the mental health professional receives information alleging that the individual "presents an *imminent* likelihood of serious harm to himself or others". (Italics ours.) RCW 71.05.150(2). The term "likelihood of serious harm" is defined to mean:

> a substantial risk that physical harm will be inflicted by an individual upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm . . .

RCW 71.05.020(3)(b).[4] Moreover, commitment is permissible only "after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the person or persons providing the information . . .". RCW 71.05.150(2).

Spencer argues that Fichtler was grossly negligent in the discharge of these statutory duties, principally by failing to investigate the credibility of Elayne Spencer and the facts alleged in her affidavit. Spencer also asserts that Fichtler was grossly negligent in detaining him absent any indication that he presented an "imminent" likelihood of causing serious physical harm to himself or others. We disagree.

■ Our Supreme Court has defined gross negligence as:

> gross or great negligence, that is, negligence substantially and appreciably greater than ordinary negligence. Its correlative, failure to exercise slight care, means not the total absence of care but *care substantially or appreciably less than the quantum of care inhering in ordinary negligence.*

(Italics ours.) *Nist v. Tudor,* 67 Wn.2d 322, 331, 407 P.2d 798 (1965). *Accord, O'Connell v. Scott Paper Co.,* 77 Wn.2d

---

[4]The Washington Supreme Court has interpreted this statute "as requiring a showing of a substantial risk of physical harm as evidenced by a *recent* overt act . . . which has caused harm or creates a reasonable apprehension of dangerousness." (Italics ours.) *In re Harris,* 98 Wn.2d 276, 284–85, 654 P.2d 109 (1982). However, because Spencer's detention occurred before *Harris* was decided, we decline to evaluate Fichtler's conduct in light of the requirement that the overt act evidencing dangerousness be "recent".

186, 189, 460 P.2d 282 (1969); *Jones v. Widing,* 7 Wn. App. 390, 393, 499 P.2d 209 (1972). Under this standard, Fichtler's actions cannot be characterized as grossly negligent.

With respect to the adequacy of Fichtler's investigation, Spencer provides a virtual laundry list of steps that Fichtler allegedly should have taken before commitment. In particular, Spencer asserts that Fichtler should have contacted other relatives and the objects of his alleged threats. Even if conducting such an inquiry would have been appropriate, Fichtler's failure to do so hardly rises to the level of gross negligence. It is undisputed that Fichtler attempted to corroborate Elayne's account in a telephone conversation with Spencer's other daughter, Karen. In addition, Fichtler's observation of Spencer at his home must also be counted as part of the "investigation . . . of the specific facts alleged". RCW 71.05.150(2). Indeed, because Spencer's threats were communicated only to Elayne, it is difficult to see what any further investigation would have produced by way of corroboration.

We also reject the contention that Fichtler was grossly negligent in detaining Spencer absent any evidence that there was an "imminent" likelihood that Spencer would seriously harm himself or others. Spencer does not dispute that he threatened to harm several people, or that he was severely distraught over the tragic death of his daughter. One of the threatening conversations Elayne related in her affidavit took place only 3 days earlier. Moreover, even if it were true that the likelihood that Spencer would cause such harm was not imminent, we cannot say that Fichtler was grossly negligent in concluding otherwise.

Spencer next contends that a genuine issue of fact is raised by the allegation that Fichtler acted in bad faith. Again, we disagree. Spencer principally relies upon evidence in the record suggesting that Fichtler had made up his mind to arrest Spencer before he had a chance to interview and evaluate him. Even if this were true, it would not be evidence of bad faith. The Washington courts have not defined the term "bad faith," but most other jurisdictions

recognize that bad faith implies acting with tainted or fraudulent motives. For example, the court in *Ramos v. Board of Selectmen*, 16 Mass. App. 308, 450 N.E.2d 1125, 1129 (1983) stated that bad faith

> imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty *through some motive of interest or ill will*. It partakes of the nature of fraud" . . .

(italics added and omitted) (quoting *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416–17, 8 N.E.2d 895 (1937)). There simply is no evidence in the record indicating that Fichtler harbored any ill will toward Spencer.

Accordingly, we hold that there is no genuine factual issue—either as to gross negligence or bad faith—regarding the applicability of the statutory immunity to the individual defendants.

 Spencer next contends that even if RCW 71.05.120 applies to the individual defendants, it does not apply to King County. Spencer does not allege that King County engaged in tortious conduct independent of that alleged to have been committed by Fichtler and Connolly. The County's liability is based solely on the doctrine of respondeat superior. In general, where liability of the master is based upon the liability of the servant, the master cannot be liable if the servant is not liable. *See* Restatement (Second) of Agency § 217B(2) (1958). However, this rule does not apply if the nonliability of the servant is based upon a personal immunity. *See* Restatement (Second) of Agency § 217 and comment *b* (1958).

On its face, RCW 71.05.120 does not purport to immunize government entities from civil liability. Accordingly, the County may be held liable if Spencer can prove his substantive tort claims. *See, e.g., Arnsberg v. United States*, 549 F. Supp. 55, 57–58 (D. Or. 1982) (good faith immunity available to government officers cannot be asserted by federal government in an action under Federal Torts Claims Act); *Taplin v. Chatham*, 390 Mass. 1, 453

N.E.2d 421, 423 (1983) (statutory immunity of municipal employees does not apply to municipality); *Maynard v. Madison,* 101 Wis. 2d 273, 304 N.W.2d 163, 169 (Ct. App. 1981) (same).

The County, however, relying on *Creelman v. Svenning,* 67 Wn.2d 882, 885, 410 P.2d 606 (1966), argues that a governmental entity can invoke an employee's immunity if the policies underlying the immunity favor its extension to the governmental employer. In *Creelman,* the issue was if a governmental entity could be held liable for malicious prosecution allegedly committed by a prosecuting attorney. All parties conceded that the prosecutor, as a quasi–judicial officer, was personally immune. However, the court held that the policy underlying prosecutorial immunity supported its application to the governmental employer, reasoning that the prosecutor would be reluctant to prosecute if he knew that his employer might be subject to tort liability.

Although the policies underlying the immunity for mental health professionals clearly support extending that immunity to the governmental employer, we are unable to take that step. The prosecutorial immunity at issue in *Creelman* was purely a judicial creation. Here, however, we are, in effect, asked to extend a statutory immunity that is clear and unambiguous on its face. *See, e.g., Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978); *State v. Hayes,* 37 Wn. App. 786, 789, 683 P.2d 237 (1984). This is a task for the Legislature, not this court. Accordingly, we hold that the immunity created by RCW 71.05.120 does not apply to King County, and that Spencer is entitled to assert his state law tort claims on remand.

Spencer next argues that summary judgment was improperly granted as to his cause of action for outrage.[5]

---

[5]Apparently, the trial court's order granting summary judgment as to the outrage claim was not based upon the statutory immunity, as both parties address this issue on the merits. This is not surprising, however. Because the tort of outrage requires a showing that the defendant engaged in conduct "utterly intolerable in a civilized community" (italics omitted), *Grimsby v. Samson,* 85 Wn.2d 52,

We disagree.

■■ The tort of outrage (intentional infliction of serious mental distress) has three elements: First, the defendant must engage in conduct that is outrageous and extreme. It is not enough that the defendant acted with malice or intended to inflict emotional distress. Rather, liability exists

> "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

(Italics omitted.) *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975) (quoting Restatement (Second) of Torts § 46, comment *d* (1965)). Second, the conduct must result in severe emotional distress to the plaintiff. Third, the emotional distress must be inflicted intentionally or recklessly; mere negligence is not enough. *Grimsby v. Samson, supra.* The trial court initially must determine if the alleged conduct is "extreme and outrageous" under the above standard. *Phillips v. Hardwick*, 29 Wn. App. 382, 387, 628 P.2d 506 (1981). Summary judgment for the defendant is appropriate if reasonable minds could not differ on this issue. *Springer v. Rosauer*, 31 Wn. App. 418, 425, 641 P.2d 1216 (1982).

Here, even if Fichtler was negligent in performing his statutory duties, reasonable minds could not conclude that his conduct was "utterly intolerable in a civilized community" or that it went "beyond all possible bounds of decency". (Italics omitted.) *Grimsby*, 85 Wn.2d at 59. Summary judgment was, therefore, proper as to the outrage claim.

---

59, 530 P.2d 291, 77 A.L.R.3d 436 (1975) (quoting Restatement (Second) of Torts § 46, comment *d* (1965)), bad faith is necessarily shown if the underlying cause of action is proven. Therefore, the immunity logically cannot apply when outrage is alleged.

## Section 1983 Claim

In addition to his state law claims, Spencer also asserts a cause of action under the Civil Rights Act of 1871, 42 U.S.C. § 1983.[6] Section 1983 affords a private damages action against those who violate a person's federal constitutional rights under color of state law. Spencer argues that Fichtler violated his constitutional right to due process by failing to adhere to the requirement of RCW 71.05.150(2) that the mental health professional investigate the facts alleged and the credibility of the affiant. Spencer argues that this requirement "codifies" the mandate of due process.

We need not reach the merits of Spencer's section 1983 claim. State officials are afforded a qualified immunity from liability under section 1983 insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Davis v. Scherer,* __ U.S. __, 82 L. Ed. 2d 139, 104 S. Ct. 3012, 3018 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Therefore, if the constitutional right upon which the section 1983 claim is based was not "clearly established" at the time of the challenged conduct, summary judgment is proper. *See Harlow,* 457 U.S. at 818.

Spencer's claim is based upon Fichtler's alleged failure to comply with the requirement that emergency commitment be preceded by an investigation of the facts alleged and of the credibility of the person providing the information. RCW 71.05.150(2). In *Davis v. Scherer, supra,* the United States Supreme Court held that the qualified immunity defense depends *solely* upon the objective reasonableness of the defendant's conduct by reference to clearly estab-

---

[6]42 U.S.C. § 1983 states in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

lished federal constitutional law. The fact that the defendant may have violated a state statute is irrelevant to this inquiry, unless it is alleged that the statutory violation is *itself* actionable under section 1983. Because Spencer contends that RCW 71.05.150(2) "codifies" due process requirements, it appears that he is making precisely such an argument.

However, even if it were clear that Fichtler failed to comply with the statute, Spencer offers no authority for the proposition that this departure rises to the level of a constitutional violation. The case law dealing with the due process requirements of involuntary commitment has, by and large, dealt with the level of dangerousness required for commitment. *See, e.g., Suzuki v. Alba,* 438 F. Supp. 1106 (D. Hawaii 1977), *modified sub nom. Suzuki v. Yuen,* 617 F.2d 173 (9th Cir. 1980) (requiring imminent and substantial danger of physical harm); *Mignone v. Vincent,* 411 F. Supp. 1386 (S.D.N.Y. 1976) (immediate threat of harm to self, others or society). Spencer, however, challenges the adequacy of the factual investigation required for commitment. We have found no cases in this state or in any other jurisdiction that have addressed this problem in due process terms. At a minimum, the constitutional rights asserted by Spencer were not "clearly established" at the time of the challenged conduct. Therefore, summary judgment was proper as to the claims against the individual defendants.

█ Summary judgment was also appropriately awarded to the County. Although the County cannot invoke the immunity of its employees, *Owen v. Independence,* 445 U.S. 622, 638, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980), neither can the County be held liable on the basis of respondeat superior. *Monell v. Department of Social Servs.,* 436 U.S. 658, 663 n.7, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). A governmental entity is subject to section 1983 liability only when

"the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regula-

tion, or decision officially adopted and promulgated by that body's officers."

*Owen,* 445 U.S. at 655 n.39 (quoting *Monell,* 436 U.S. at 690). Here, Fichtler and Connolly were attempting to carry out the requirements of a state statute. Spencer has not even alleged the existence of an unconstitutional policy, ordinance or custom "officially adopted and promulgated" by the County.

The order of summary judgment is affirmed except with respect to the state law claim against the County; the case is remanded for proceedings consistent with this opinion.

CALLOW and CORBETT, JJ., concur.

Reconsideration denied February 19, 1985.

Review denied by Supreme Court May 10, 1985.