[No. 15482–6–I. Division One. August 27, 1986.]

ALBERT M. MARK, *Appellant,* v. DONALD H. WILLIAMS, ET AL, *Respondents.*

*Albert M. Mark,* pro se.

*Kenneth O. Eikenberry, Attorney General, Angelo R. Petruss, Senior Assistant,* and *Roger A. Gerdes, Assistant,* for respondents.

PEKELIS, J.—Albert M. Mark appeals the trial court's order denying his motion for reconsideration of its order of summary judgment. The court dismissed his complaint against the defendants, Donald H. Williams and Richard D. Morrison, for damages for the search of his pharmacy and seizure of items therein pursuant to an administrative inspection warrant obtained under RCW 69.50, the Uniform Controlled Substances Act (UCSA). Mark alleges that there are material issues of fact regarding his claim under 42 U.S.C. § 1983 and his tort claims for Fourth Amendment violations and for abuse of process. We disagree and affirm the trial court.

On January 3, 1983, the local manager of Amfac Drug Supply Company, a drug wholesaler, notified Dennis Sivak, a diversion investigator for the Drug Enforcement Administration (DEA), that Mark's Westside Prescriptions, Inc., was purchasing unusually large quantities of Valium. Four days later, the DEA advised Robert Miller, an investigator for the Washington State Board of Pharmacy (Pharmacy Board), of the purchases, and the two agencies began a joint investigation. From January 1, 1983, to January 24, 1983, the investigators determined that Mark had purchased 17,500 tablets of Valium. On January 25, 1983, Miller made a cursory review of Mark's pharmacy records and only found prescriptions accounting for approximately 200 tablets of the drug.

On January 31, 1983, a surveillance post using videotapes and photographs was established in a motel across the street from the pharmacy. The surveillance disclosed suspicious activity, usually beginning about 2 hours after Amfac reported delivery of Valium to the pharmacy.

Defendant Richard D. Morrison, an investigator for the Pharmacy Board, was informed by the DEA of the suspicious activity at Mark's pharmacy. On the afternoon of February 4, 1983, Morrison applied for an administrative inspection warrant pursuant to RCW 69.50.501, .502 from a Seattle district court judge. The application alleged:

> The following items have been used in violation of this Act or are themselves contraband and seizure of them is hereby requested in addition to anything else found during the inspection to be in violation of this Act:
>
> . . .
>
> All controlled substances at the premises, Samples of amber plastic vials and paper bags, All records pertaining to the acquisition and distribution of controlled substances.

Morrison submitted an affidavit in support of the application and testified in response to questions posed by the judge who issued the warrant providing for the seizure of the requested items. In an affidavit in support of the motion for summary judgment, Morrison stated:

I testified truthfully, fully disclosed all information that I believed to be relevant to the warrant application proceeding, and did not knowingly withhold any relevant or material information from the court.

In obtaining and executing the warrant . . . I fully believed said warrant had been validly issued and lawfully required the inspection and seizure of which plaintiff complains in this action. . . .

At approximately 6 p.m. on February 4, 1983, Morrison arrested three customers leaving Mark's pharmacy with unlabeled vials of Valium. At approximately 6:20 p.m. Morrison served the warrant on Mark. He was arrested, and various persons assisted in the inventory and seizure of drugs and records pursuant to the warrant. Cash in the amount of $1,139.07 was also seized. Mark was repeatedly asked if he wished to stay at the pharmacy to allow the inventorying or if he wished to go for processing and complete the audit later. Mark indicated that he wished to stay. The inventory and seizure concluded at 1:30 a.m. on February 5, 1983. Subsequently, the DEA reviewed the pharmacy records and prepared an audit report. Seventy controlled drugs were audited with 111,585 unaccounted-for dosage units.

On March 24, 1983, Mark was charged with five counts of violation of the Uniform Controlled Substances Act (VUCSA). Apparently, Mark filed a motion to suppress evidence, and in a memorandum opinion the trial court found that the administrative inspection warrant was invalid because its scope was too broad, the affidavit in support of the issuance of the warrant was deficient, and the additional information provided in support of the warrant was not summarized in writing. Therefore, the court found that the items at the pharmacy were seized illegally and suppressed evidence of these items. Despite this ruling, on July 1, 1983, Mark was convicted of four counts of VUCSA.

On August 15, 1983, Mark filed a complaint against Morrison and Donald H. Williams, the executive secretary of the Pharmacy Board, for violation of his civil rights, abuse

of process, intentional infliction of mental distress, defamation, and invasion of privacy arising from the February 4 search and seizure. The complaint alleged Mark was damaged in excess of $523,364.90. Mark also filed a lawsuit in federal district court for $1,512,864 in damages against Morrison, Williams and DEA investigators, alleging the deprivation of his Fourteenth Amendment right to due process, a claim under 42 U.S.C. § 1983, as well as several state law tort claims. Williams and Morrison were dismissed from the federal suit. In an order filed November 15, 1983, the federal court granted the defendants' motion for summary judgment and dismissed Mark's complaint, finding the defendants had a qualified immunity from liability for the section 1983 claim and an absolute immunity from liability for the state law tort claims.[1]

On September 4, 1984, Williams and Morrison filed a motion for summary judgment in this action. On September 18, 1984, the court entered an order granting the motion, and dismissing Mark's complaint with prejudice. On October 9, 1984, the court denied Mark's motion for reconsideration.

■ A motion for summary judgment under CR 56(c) should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The court must consider all of the facts submitted and reasonable inferences therefrom in the light most favorable to the nonmoving party. The court should grant the motion only if, from all of the evidence, reasonable persons could reach but one conclusion. In reviewing the trial court's decision, this court engages in the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Donald v. Vancouver,* 43 Wn. App. 880, 883, 719

---

[1]The parties have not raised the issue of whether the federal court's dismissal bars the claims in state court under the doctrine of res judicata or collateral estoppel.

P.2d 966 (1986).

Mark first claims that the trial court erred in granting summary judgment because there was a material issue of fact regarding his claim under 42 U.S.C. § 1983.[2] To state a claim for relief under section 1983, the plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908, 1913 (1981), *overruled on other grounds in Daniels v. Williams,* ___ U.S. ___, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986);[3] *Brower v. Wells,* 103 Wn.2d 96, 104–05, 690 P.2d 1144 (1984).

There is no question that the search and seizure was carried out pursuant to RCW 69.50.501, .502, and .505. Accepting the trial court's ruling in the criminal action that the administrative inspection warrant was invalid and therefore the items seized at Mark's pharmacy were seized in violation of the Fourth Amendment, Mark has also met his burden under the second prong of the test.

However, Williams and Morrison enjoy a qualified immunity against liability for their action.

[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396,

---

[2]42 U.S.C. § 1983 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3]*Daniels* overruled *Parratt* only "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Daniels,* 106 S. Ct. at 665.

102 S. Ct. 2727, 2738 (1982); *Spencer v. King Cy.*, 39 Wn. App. 201, 211, 692 P.2d 874 (1984). The test enunciated in *Harlow* has effectively eliminated the subjective component of qualified immunity, establishing a purely objective standard.[4]

The defendants had a right to believe they could operate as they did since the applicable statutes conferred broad authority under the circumstances as they existed here. RCW 69.50.502(1), addressing the issuance and execution of administrative inspection warrants, provides in part that a "judge . . . upon proper oath or affirmation showing probable cause, may issue warrants for the purpose of conducting administrative inspections *authorized by this chapter or rules hereunder, and seizures or [sic] property appropriate to the inspections.*" (Italics ours.) The subsection then defines probable cause in the context of the issuance of administrative inspection warrants. Given the broad statutory language, it was reasonable for Morrison to believe that the warrant was validly issued.

RCW 69.50.502(2)(e) requires that the warrant be served during normal business hours. Mark argues that because his business hours were 10 a.m. to 6 p.m. and the warrant was served after 6 p.m., the investigators acted unreasonably. However, as those conducting the surveillance operation observed, Mark did not keep his posted hours and at times would permit customers to enter the pharmacy after 6 p.m. In addition, the doors to the pharmacy were always locked. Under the circumstances, the investigators did not act unreasonably in serving the warrant at approximately 6:20 p.m., especially when two of the customers arrested immediately before the warrant was served had entered the pharmacy after posted business hours.

---

[4]Previously, qualified immunity could be defeated either if the government official knew or reasonably should have known that the action taken would violate the constitutional rights of the plaintiff, or if the official took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. *Wood v. Strickland*, 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992, 1001 (1975); *Hocker v. Woody*, 95 Wn.2d 822, 825, 631 P.2d 372 (1981).

While RCW 69.50.501(3) read in isolation would only seem to permit inspection, inventorying, and the obtaining of samples under an administrative inspection warrant, when read with RCW 69.50.505, a different picture emerges. RCW 69.50.505(a) provides in part that controlled substances, property used as a container for controlled substances, books and records used in violation of RCW 69.50, and all money or negotiable instruments furnished in exchange for controlled substances, are subject to search and seizure.[5]

Further, under RCW 69.50.505(b), property is subject to forfeiture under RCW 69.50 even without a warrant if (1) the seizure is incident to an arrest, a search under a search warrant, or an inspection under an administrative inspection warrant, or (2) a board inspector or law enforcement officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety or was used or is intended to be used in violation of RCW 69.50. Thus, under the broad authority to seize items under RCW 69.50.505, a reasonable person would believe that a seizure under the circumstances presented here would not violate a clearly established statutory or constitutional right. Case law also supports this conclusion. *E.g., United States v. Acklen,* 690 F.2d 70 (6th Cir. 1982); *United States v. Schiffman,* 572 F.2d 1137 (5th Cir. 1978); *United States v. Goldfine,* 538 F.2d 815 (9th Cir. 1976).[6] Under the facts of

---

[5]In addition, RCW 69.50.501(4) provides that under certain conditions, "This section does not prevent the inspection without a warrant of books and records pursuant to an administrative subpoena . . ., nor does it prevent entries and administrative inspections, *including seizures of property,* without a warrant . . ." (Italics ours.) Thus, by negative implication, seizures of property with a warrant are permissible.

[6]In *Malley v. Briggs,* ___ U.S. ___, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), a damages action brought under 42 U.S.C. § 1983, the plaintiffs alleged that the defendant police officer caused them to be unconstitutionally arrested when the complaint and affidavit supporting the warrant for their arrest failed to establish probable cause. The Court adopted the objective *Harlow* test and, citing *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984) (use of objective reasonableness standard in a suppression hearing), held: "Only where

this case and the standards set forth above, Williams and Morrison are immune from liability for their actions in obtaining and executing the warrant. Therefore, there is no material issue of fact regarding Mark's claim under 42 U.S.C. § 1983.

Mark next claims that the trial court erred in granting summary judgment because he was entitled to bring a tort claim pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). In *Bivens,* the Court held that one is entitled to recover money damages for any injuries suffered as a result of a violation of the Fourth Amendment by federal narcotics agents. *Bivens,* 91 S. Ct. at 2005. However, the Court would not consider the issue of immunity because it had not been addressed by the Court of Appeals, and it reversed and remanded the case for proceedings consistent with its opinion. *Bivens,* 91 S. Ct. at 2005.

█ On remand, the Court of Appeals held that federal agents, while pursuing alleged violators of the narcotics laws or other criminal statutes, "have no immunity to protect them from damage suits charging violations of constitutional rights." *Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1341 (2d Cir. 1972). The court further held, however, that it is a valid defense to such charges to allege and prove good faith and reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the manner conducted. *Bivens,* 456 F.2d at 1348. Thus, the court gave government officials the substantial equivalent of a qualified immunity against liability for tort damages suffered as a result of a Fourth

---

the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, . . . will the shield of immunity be lost." *Malley,* 106 S. Ct. at 1098. Here, the suppression judge noted the opposite problem with the warrant. The application for the administrative inspection warrant had such abundant indicia of probable cause that the court believed more than a mere administrative investigation was underway. Rather, the court found it objectionable that the investigation appeared to be aimed at providing sufficient evidence for a criminal prosecution.

Amendment violation.[7] We hold that under the *Bivens* standard, the defendants here have a complete defense. As Morrison stated in his affidavit in support of the motion for summary judgment, he believed in obtaining and executing the warrant that "[it] had been validly issued and lawfully required the inspection and seizure of which [Mark] complains . . ." There was no evidence presented to dispute this statement, and thus there was no issue of fact about the defendants' good faith. Our earlier conclusion that the defendants had a qualified immunity when they acted in the manner complained of is dispositive of the second *Bivens* requirement, that the defendants reasonably believed they acted lawfully. Summary judgment on the *Bivens* claim was appropriate.

 Finally, Mark claims that the court erred in granting summary judgment because the scope of the search and seizure exceeded the proper bounds of an administrative inspection warrant and there was a material issue of fact whether this constituted an abuse of process. Restatement (Second) of Torts § 682, at 474 (1977) provides for such a cause of action:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

The essential elements of the tort commonly referred to as "abuse of process" are (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings. *Sea–Pac Co. v. United Food & Comm'l Workers, Local 44,* 103

---

[7]Later cases actually refer to the defense as a qualified immunity. *E.g., McKinney v. Whitfield,* 736 F.2d 766, 769 n.15 (D.C. Cir. 1984), where the court stated: "Federal law enforcement officers, like their state counterparts, may claim only qualified immunity from suits alleging *constitutional* violations." We note that this qualified immunity created in *Bivens,* unlike the qualified immunity enunciated later in *Harlow* for § 1983 actions, is based on both a good faith (subjective) and reasonableness (objective) test.

Wn.2d 800, 806, 699 P.2d 217 (1985); *Fite v. Lee,* 11 Wn. App. 21, 27, 521 P.2d 964, 97 A.L.R.3d 678 (1974). The crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his or her property in court, has been misused to achieve another, inappropriate end. *Sea-Pac,* at 806; *Batten v. Abrams,* 28 Wn. App. 737, 745, 626 P.2d 984 (1981).

There is no evidence that the defendants had an ulterior purpose and no evidence that they improperly used the legal proceedings to accomplish a purpose for which they were not designed. The civil violations and criminal prosecutions are inextricably related. It would be strange indeed if after conducting an administrative investigation in which evidence of criminal activity was obtained, criminal charges could not be filed. Mark has presented no evidence to support an abuse of process claim.

We affirm the trial court.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court December 2, 1986.