# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMES D. AITKINS, | No. 60541-4-II |
| Appellant, | |
| v. | |
| BEVERLY GRANT LAW FIRM, P.S., BEVERLY G. GRANT, JEFFERY D. BRADLEY, and THOMAS R. MCCOSH, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, J.—James Aitkins was a member of an LLC that ran a restaurant. After being fired as general manager of the restaurant, he sued the LLC, received a default judgment, and seized the contents of the LLC's bank account. As a result, the LLC could not pay rent, so its landlord sued the LLC and Aitkins, who was a coguarantor on the lease. Represented by attorneys at the Beverly Grant Law Firm, the LLC demanded arbitration with Aitkins per the LLC membership agreement, claiming that he was still an LLC member and had breached his duties of care and loyalty. The LLC requested, and the trial court granted, a stay of the enforcement of Aitkins' default judgment until resolution of the arbitration and the landlord's case.

Aitkins then sued the law firm, arguing that its statements in the arbitration demand and other court filings constituted defamation and represented Aitkins in a false light. Aitkins also argued that demanding arbitration was an abuse of process meant to intimidate Aitkins into forfeiting the remainder of his default judgment. The law firm moved for summary judgment,

which the trial court granted, dismissing Aitkins' claims. The trial court concluded that the law firm's challenged statements were protected by litigation privilege and that Aitkins had not sufficiently demonstrated that the law firm's actions constituted an abuse of process.

Aitkins appeals, arguing that the trial court misapplied the litigation privilege doctrine to his abuse of process claim and improperly granted summary judgment before discovery was complete.

We hold that the trial court correctly determined that, as a matter of law, Aitkins does not show that the law firm abused the litigation process. Accordingly, the trial court did not err by concluding that the law firm's statements were privileged. We also conclude that the trial court did not abuse its discretion when it did not allow time for further discovery before granting summary judgment where Aitkins did not articulate what specific discovery he sought or how additional discovery would raise a genuine dispute of material fact. We affirm.

FACTS

I. BACKGROUND

Kathy Dance, Michael Dance, and James Aitkins were members of Joeseppi's Tacoma LLC, which operated a restaurant. The Dances owned 90 percent of the LLC and Aitkins owned 10 percent. Aitkins worked as general manager of the restaurant. The LLC membership agreement stated, "Any dispute arising out of or related to this Agreement that the Members are unable to resolve by themselves shall be settled by arbitration." Clerk's Papers (CP) at 230. The LLC agreement had no language indicating how members could be removed.

On or around March 13, 2021, the Dances fired Aitkins as general manager of the restaurant. Aitkins claims that, on that date, the Dances also voted to dissociate him as a member of the LLC.

Later, the Dances produced a document purporting to be minutes from a meeting dated March 11 between the Dances, Aitkins, and others related to the LLC. The minutes stated that the meeting participants "[p]resented Jim Aitkins with options for future involvement, removal as current [general manager] due to performance issues, lack of leadership and management experience." CP at 122. As a result, they "[d]etermined Jim will no longer be the general manager and his active ownership, as per his request, will no longer remain. He will however maintain his 10% equity share." *Id.* Aitkins challenges the validity of this document.

Also in March 2021, the Dances filed a document with the Washington State Liquor and Cannabis Board listing themselves as 100 percent owners of the LLC.

In April 2021, Aitkins wrote a demand letter to the Dances claiming that they had illegally terminated him in retaliation for speaking to Kathy about drinking alcohol at work. In this letter, Aitkins also sought a buyout for his 10 percent membership in the LLC, distribution of 10 percent of the LLC's profits, retroactive compensation for his role as general manager, and out-of-pocket expenses related to the restaurant. Aitkins stated that the Dances had breached the LLC agreement by failing to seek arbitration to remove him as a member. However, Aitkins also stated that he accepted the Dances' vote to remove him from the LLC and voluntarily removed himself. In June 2021, Aitkins had an attorney write a demand letter to the Dances demanding payment for retaliatory termination, unpaid wages and compensation, and reimbursement of business expenses Aitkins had incurred. Aitkins offered to accept $75,000.

## II. PROCEDURAL HISTORY

### A.    Aitkins' Suit Against the Dances

In August 2021, Aitkins sued the Dances and the LLC for unpaid wages, failure to provide access to employee files, failure to reimburse business expenses, and unlawful retaliatory termination in response to his complaints about Kathy Dance's drinking at work and her management of an employee's sexual harassment claim. When the LLC did not take any action regarding Aitkins' suit, the trial court entered a default judgment for Aitkins in the amount of $122,332.11. It is undisputed that Aitkins then secured a garnishment judgment against the LLC's bank, and all the money in the LLC's operating account was seized. As a result, the Dances defaulted on the restaurant's rent.

### B.    The Landlord's Suit and the Dances' Arbitration Demand

In August 2022, the landlord brought a lawsuit against the LLC, the Dances, and Aitkins for breach of the restaurant's lease regarding failure to pay rent. Aitkins was a coguarantor on the lease.

At some point, the Dances hired the Beverly Grant Law Firm, including attorneys Beverly G. Grant, Jeffrey D. Bradley, and Thomas R. McCosh, to represent them and the LLC.

In December 2022, on behalf of the LLC, the law firm sent Aitkins a demand for arbitration. The arbitration demand stated,

> Jim A[i]tkins was given a 10% Interest in Joeseppi's Tacoma, LLC. After becoming a member and part-owner of the company, Mr. A[i]tkins filed a frivolous, bad faith lawsuit against the business, absconded with business funds, and subjected the business to other losses and liabilities, [which] constitute breaches of his duties of care and loyalty.

4

CP at 530. The attorneys said that the LLC was seeking monetary relief and dissolution of Aitkins' ownership interest in the business and his formal dissociation as a member. Aitkins responded to this demand for arbitration, stating that he was not a member of the LLC, so there was no dispute among members requiring arbitration.

In January 2023, the law firm, on behalf of the LLC, moved to stay proceedings in the suit with the landlord until after arbitration. The law firm cited former RCW 25.15.131(2) (2015), the statute that was in force when Aitkins sent his demand letter, which stated that a member of an LLC "may not withdraw from the [LLC] without the written consent of all other members."

The law firm also stated,

> When Mr. Aitkins departed the company, he took the only copies of several business documents, and wrongfully withdrew substantial sums of money from the operating account for [the LCC]. This caused hardship on the business which had a trickle-down effect, in turn causing [the LLC] to default on its lease obligations and causing other financial hardships on the business. Then, Mr. Aitkins filed a bad-faith lawsuit against [the LLC], fabricating allegations from whole cloth that he was owed "wages" . . . . Mr. Aitkins included several other causes of action and made inflammatory and defaming remarks about his fellow members, wrongly accusing them of alcoholism and misconduct. In a pernicious abuse of judicial process, Mr. Aitkins was granted a sizeable default judgment against the company. Paradoxically, Mr. Aitkins now holds this judgment notwithstanding that he was, is, and remains a part of the company and is obligated to share in the company's liabilities. Mr. Aitkins then leveraged his default judgment to continue holding [the LLC] hostage, draining its operating accounts of funds and causing the business to default on its contractual obligations in a wanton and flagrant violation of Mr. Aitkins' duties of care and loyalty to the company and to his fellow members.

CP at 203-04.

In February 2023, the LLC, through the law firm, moved to stay enforcement of Aitkins' default judgment pending arbitration and resolution of the landlord's case, and alternatively, to set aside the default judgment. The motion stated, "To the extent that Mr. Aitkins has liability to the business and his fellow members for breaches of a fiduciary duty, it would be fair and equitable to

offset those claims against the judgment." CP at 235. The motion further explained that permitting Aitkins to continue collecting his default judgment may prevent the LLC from pursuing its claims regarding Aitkins' responsibilities to the LLC.

In March 2023, the LLC answered the landlord's complaint and brought cross claims against Aitkins. The LLC's attorneys argued that Aitkins was still a member of the LLC and had breached his duties of care and loyalty to the LLC. The LLC contended that Aitkins had acted with gross negligence regarding these duties and was required to indemnify the LLC for any damages or expenses incurred as a result of his actions. The LLC again demanded arbitration. It is undisputed that the trial court granted the LLC's motion to stay enforcement of Aitkins' default judgment pending the result of arbitration.

Later in March 2023, the law firm withdrew as counsel for the LLC. In its summary judgment motion, the law firm stated that the LLC terminated the law firm after a preliminary hearing with the arbitrator, but the record does not state the reason for this termination.

C.      Aitkins' Suit Against the Law Firm

In June 2024, Aitkins sued the law firm and its attorneys, arguing that statements made in its demand for arbitration, motion to stay the landlord's legal proceedings, answer and cross claims, and motion to stay enforcement of the default judgment constituted defamation and presented him in a false light.

Aitkins also claimed that the law firm's arbitration demand, which he alleged contained a series of false allegations against Aitkins, was intended to prevent Aitkins from continuing to collect on his default judgment. Specifically, Aitkins stated that the law firm "improperly initiated and used arbitration against [Aitkins] as a tool to accomplish objectives other than those described

in their arbitration demand filing." CP at 12. Accordingly, Aitkins brought an abuse of process claim against the law firm.

Aitkins stated that as a result of the law firm's filings, a judgment was entered against him for more than $100,000, though that judgment is not on our record.

In October 2024, the law firm submitted a jury demand for this case. Also in October 2024, the law firm and attorney McCosh moved for summary judgment to dismiss Aitkins' claims, arguing that statements made in the course of a judicial proceeding that were pertinent to the litigation were not actionable under the litigation privilege. Additionally, even if the statements were not privileged, Aitkins could not demonstrate that they were false and negligently published. Finally, the law firm and McCosh argued that Aitkins lacked evidence to support his abuse of process claim.

Aitkins responded to these motions, arguing that litigation privilege does not extend to reckless or unsubstantiated false statements and is not available if there was an abuse of process. Regarding his abuse of process claim, Aitkins said,

> [T]he evidence shows that the [law firm] had no clear, cogent, good faith, or proper purpose – not under the facts nor the law – for initiating their arbitration claim against [Aitkins]. Yet, for three months, they pursued an ill-fated arbitration case and an equally ill-fated counterclaim in civil proceedings to make false and outlandish statements about [Aitkins] before abruptly announcing their withdrawal.

CP at 556. Aitkins contended that the arbitration demand was not submitted for a lawful purpose because it misrepresented Aitkins' actions, Aitkins was not a member of the LLC subject to arbitration under the LLC agreement at the time, and the law firm had not demonstrated that the demand was timely. Aitkins stated that the law firm's actions "were designed to intimidate [Aitkins] into forgoing his judgment against [the LLC]." CP at 566.

Aitkins also stated that the law firm and McCosh had improperly moved for summary judgment before discovery was complete and had not fully responded to his discovery requests. Aitkins claimed that this discovery would reveal "the ownership status of [the LLC], as of the date they filed their arbitration case, the untimeliness of their arbitration claim, and . . . prove there was no factual basis for their defamatory statements." CP at 547.

At the summary judgment hearing,[1] the trial court asked Aitkins, "Do you concede that every single statement that you're relying on as part of your defamation/abuse of process lawsuit appears in the prior cases in filings?" Verbatim Rep. of Proc. (VRP) at 4. Aitkins responded, "Yes. There are some communications that perhaps were not included in those cases but may have been in the exhibits in this case. I would have to do a review." VRP at 5.

The law firm again argued litigation privilege regarding Aitkins' defamation claims. The law firm also stated, "As for the abuse of process claim, which does rely on the defamatory statements, they also center on the initiation of arbitration, which was done for the intended purpose of investigating how proper the judgment was in the underlying action." *Id.*

In its oral ruling, the trial court stated,

> In reviewing the statements in [Aitkins'] complaint, there was a demand for arbitration, a motion to stay enforcement, statements made in the motion to stay proceedings, statements made in the answer and cross-claim, and I couldn't find a single statement that you were relying upon that was not part of a pleading or argument that was made relating substantively to that prior litigation.
>
> While you are correct that the litigation privilege is not absolute in the context of the abuse of process, your reliance on *Mason v. Mason*[2] is misplaced.

---

[1] Aitkins brought a cross motion for summary judgment, which the trial court did not consider at this hearing because it was not timely. On appeal, Aitkins does not challenge the trial court's decision not to hear his summary judgment motion.

[2] 19 Wn. App. 2d 803, 497 P.3d 431 (2021).

> For abuse of process, the statements cannot be related to the legitimate purpose of a judicial proceeding.

VRP at 12-13. The trial court went on to explain that the attorneys in this case did not intentionally employ the legal process "for an inappropriate and extrinsic end." VRP at 13. Instead, it appeared Aitkins was "trying to relitigate the merits" of the prior lawsuits. *Id.*

Accordingly, the trial court granted the law firm's and McCosh's summary judgment motions and dismissed Aitkins' case against them. Aitkins then brought a motion to reconsider, which the trial court denied.

ANALYSIS

I. STANDARD OF REVIEW

We review summary judgment motions de novo. *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020). "Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law" *Id.* (citing CR 56(c)). A material fact is a fact that affects the outcome of the litigation. *Id.*

When a defendant moves for summary judgment showing the absence of evidence supporting the plaintiff's case, "the burden shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact exists for trial." *Id.* "The nonmoving party cannot rely on 'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" *Id.* at 31-32 (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). If the plaintiff fails to show sufficient evidence creating a question of fact about an essential element on which they will have the burden of proof at trial,

9

summary judgment is appropriate. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020).

## II. LITIGATION PRIVILEGE

A.     Defamation

Aitkins argues that the law firm's statements he challenges as defamation are not subject to litigation privilege because they were not pertinent to the relevant litigation.

Statements made by attorneys in a lawsuit are immune from civil liability if the statements bear some relation to a judicial proceeding. *Mason*, 19 Wn. App. 2d at 830. For defamation claims, contested statements, "'spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought.'" *Id.* at 831 (emphasis omitted) (quoting *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980)). As it relates to attorneys, litigation privilege is based on the public policy of ensuring that attorneys have "'the utmost freedom in their efforts to secure justice for their clients.'" *Id.* (quoting *McNeal*, 95 Wn.2d at 267). Litigation privilege applies to arbitration proceedings. *See Valve Corp. v. Butcher L. PLLC*, 34 Wn. App. 2d 727, 742-43, 571 P.3d 312, *review denied*, 5 Wn.3d 1022 (2025).

Washington courts have noted that litigation privilege applies only in situations where authorities have the power to sanction or discipline attorneys for improper conduct and strike impermissible statements from the record. *Mason*, 19 Wn. App. 2d at 832. This is because these are other safeguards inherent in the judicial process that provide checks on attorneys' conduct and statements. *Young v. Rayan*, 27 Wn. App. 2d 500, 510, 533 P.3d 123 (2023). These safeguards include CR 11 sanctions, contempt proceedings, witness oaths, cross-examination, and the threat

of prosecution for perjury. *Id.* "Additionally, immunity does not typically extend to professional disciplinary proceedings, which may occur based on testimony or behavior during litigation and which are therefore an additional avenue to confront harm caused by privileged statements." *Id.*[3]

Here, Aitkins does not contest that the law firm's challenged statements were all made in pleadings, filings, or documents related to a judicial proceeding. Aitkins argues that the law firm's statements regarding his actions related to the LLC—including, for example, that Aitkins took money from the LLC and that he owed a duty of care and loyalty to the LLC as a member after March 2021—"served no legitimate litigation function." Opening Br. of Appellant at 33.

As the trial court emphasized, the challenged statements here were made in the LLC's arbitration demand, motion to stay enforcement of Aitkins' default judgment, motion to stay proceedings, and answer and cross claims related to the landlord's suit. In these documents, the attorneys for the LLC were attempting to establish Aitkins' responsibility to the LLC and recover damages that the LLC believed Aitkins owed the business. Accordingly, the attorneys' statements on behalf of the LLC were pertinent to the claims that the LLC was attempting to arbitrate and litigate against Aitkins. As a result, these statements were protected by litigation privilege, and the trial court did not err by dismissing Aitkins' defamation claim on summary judgment.

B.      Abuse of Process

Aitkins argues that the trial court erred by applying the litigation privilege to conduct by the law firm that constituted an abuse of process. Aitkins contends that the law firm "initiated a knowingly baseless arbitration proceeding not to resolve a legitimate dispute, but to obtain a stay

---

[3] While *Young* and *Mason* may contain conflicting analysis about litigation privilege and abuse of process claims, we need not address that conflict here where we conclude that litigation privilege does apply to the law firm's statements.

of enforcement of a lawful civil judgment and to malign [Aitkins] with knowingly false allegations of larceny and misconduct." Opening Br. of Appellant at 16.

"Abuse of process" is a tort that "involves the misuse of a judicial proceeding to accomplish an end for which the process was not designed." *Mason*, 19 Wn. App. 2d at 834. To succeed on an abuse of process claim, a party must show both "'(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Saldivar v. Momah*, 145 Wn. App. 365, 388, 186 P.3d 1117 (2008) (quoting *Mark v. Williams*, 45 Wn. App. 182, 191, 724 P.2d 428 (1986)).

The "'mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" *Id.* (quoting *Fite v. Lee*, 11 Wn. App. 21, 27-28, 521 P.2d 964 (1974)). "There must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Id.* at 389. In *Saldivar*, the Saldivars, a married couple, sued two doctors and the medical group they operated under, in part stating that one of the doctors had sexually abused the wife. *Id.* at 374-76. At a deposition before trial, the husband stated that the lawsuit was intended to make sure "'these people don't practice medicine again.'" *Id.* at 377 (quoting the record). One of the doctors brought a counterclaim for abuse of process against the Saldivars, which the trial court granted. *Id.* at 375, 384. This court reversed, stating that making sure a doctor is not permitted to practice in the future is not an improper purpose for instituting a lawsuit alleging sexual abuse by a medical professional. *Id.* at 388-89, 407. Additionally, because the doctor failed to demonstrate that the Saldivars took action after filing the lawsuit to accomplish an unrelated and improper end, even if the Saldivars had fabricated

their claims of sexual abuse by the doctor, this would not have constituted an abuse of process. *Id.* at 389.

"Integral to an abuse of process claim, the complained of conduct, by its nature, must not be related to the legitimate purposes of a judicial proceeding." *Mason*, 19 Wn. App. 2d at 835. Accordingly, in *Mason*, this court held that "litigation privilege does not apply, and an attorney can be liable for abuse of process where the attorney was alleged to have intentionally employed legal process for an inappropriate and extrinsic end." *Id.*

In *Mason*, the appellant contended that her ex-husband and his attorney had intentionally used family law proceedings to "further control and abuse her" and to threaten her immigration status, purposes that were not related to the legitimate purpose of the family law proceedings. *Id.* at 840. As a result, this court determined that the trial court erred by concluding that litigation privilege barred consideration of this alleged abuse of process. *Id.*

Then, in *Scott v. Am. Express Nat'l Bank*, this court reiterated *Mason*'s holding that "litigation privilege does not apply when the facts are such that application of the privilege would defeat the public policy considerations justifying the privilege." 22 Wn. App. 2d 258, 267-68, 514 P.3d 695 (2022). *Scott* further clarified that litigation privilege does not apply to the narrow set of circumstances where an attorney "'misappropriates a judicial proceeding to achieve an improper and extrinsic end,'" such that immunity would not preserve the integrity of the judicial process nor further the administration of justice. *Id.* at 268 (quoting *Mason*, 19 Wn. App. 2d at 837).

Here, in his response to the law firm's summary judgment motion, Aitkins alleged that the law firm abused the litigation process by using the arbitration demand to intimidate Aitkins into not collecting the remainder of his default judgment against the LLC. He stated that the arbitration

demand misrepresented Aitkins' actions, incorrectly stated that Aitkins was a member of the LLC subject to the arbitration clause in the LLC agreement, and was untimely.

However, Aitkins presented no evidence supporting his contention that the arbitration was an intimidation tactic. The law firm did move to stay enforcement of the default judgment against the LLC until after arbitration and conclusion of the landlord's lawsuit. However, the law firm explained, "To the extent that Mr. Aitkins has liability to the business and his fellow members for breaches of a fiduciary duty, it would be fair and equitable to offset those claims against the judgment." CP at 235. And permitting Aitkins to continue collecting on his default judgment would potentially prevent the Dances from recovering on their claims regarding Aitkins' responsibilities to the LLC. Aitkins offered nothing to establish that these were not legitimate considerations and within the legitimate purpose of the LLC's litigation strategy, when considered in its entire context.

Aitkins asserts that the fact the law firm abandoned the arbitration proceeding after not producing evidence or prosecuting their claims supports this conclusion. However, only a couple of months passed between when the law firm brough the arbitration demand on behalf of the LLC and when it withdrew as counsel for the LLC. Given that we have nothing in the record indicating the reason for the law firm's withdrawal, this relatively short period of time does not sufficiently indicate that the law firm was not intending to actually pursue arbitration on behalf of its client.

Additionally, the facts surrounding Aitkins' actions regarding the LLC and Aitkins' membership and responsibility to the LLC were exactly the issues that the arbitration sought to resolve. The arbitration demand's inclusion of assertions regarding these issues was not an abuse of process. Aitkins failed to overcome this legitimate purpose for the arbitration. While the law

firm submitted the arbitration demand almost two years after Aitkins' departure, this timing is not sufficient on its own to meet the standard for abuse of process.

Accordingly, as a matter of law, Aitkins failed to raise any nonspeculative evidence to show that the law firm had abused the litigation or arbitration process by using it for an ulterior or improper end. As a result, the law firm's statements and actions he challenges are protected by litigation privilege.

Aitkins further argues that "[a]sserting claims that are wholly unsupported by any evidence demonstrating a legitimate basis for using law and legal or quasi-legal proceedings to compel another party to defend themselves against fictitious claims is the very definition of a sham proceeding." Appellant's Reply Br. at 25-26. However, the "'mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" *Saldivar*, 145 Wn. App. at 388 (quoting *Fite*, 11 Wn. App. at 27-28). More importantly, the law firm articulated legitimate purposes behind its litigation strategy on behalf of the LLC. Thus, even if the claims against Aitkins were incorrect or turned out not to have a sufficient factual basis, the law firm would not be liable for abuse of process.[4]

---

[4] Aitkins cites *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998), and *Kearney v. Foley & Lardner, LLP*, 582 F.3d 896 (9th Cir. 2009), as support for his argument that the litigation privilege should not apply to the law firm's statements. However, these Ninth Circuit cases analyze immunity from civil liability for parties petitioning the government. *Kearney*, 582 F.3d at 903; *Kottle*, 146 F.3d at 1059. Because this is not the theory of immunity that the law firm or trial court relied on here, any exceptions to this immunity are not applicable in this case.

### III. SUMMARY JUDGMENT PROCEDURE

A.     Burden of Proof

Aitkins argues that the trial court erred by granting the law firm's summary judgment motion when the law firm had not submitted evidence demonstrating that Aitkins was still a member of the LLC and, therefore, the demand for arbitration was valid and not an abuse of process. Aitkins argues that the law firm failed to meet its burden to demonstrate that there was no genuine issue of material fact regarding this issue.

As described above, part of the purpose of the arbitration was to determine Aitkins' relationship and responsibilities to the LLC. Accordingly, the law firm did not have to submit evidence demonstrating that Aitkins was a member of the LLC to show that its arbitration demand was not an abuse of process.

Additionally, in its challenged filings, the law firm cited former RCW 25.15.131(2), which stated that a member of an LLC "'may not withdraw from the [LLC] without the written consent of all other members.'" CP at 203 (emphasis omitted) (quoting former RCW 25.15.131(2)). Aitkins does not challenge the application of this statute, nor did he produce a document demonstrating the written consent of all members regarding his removal. While he cites the document the Dances submitted to the Washington State Liquor and Cannabis Board as evidence that he was not a member of the LLC, this document only confirms that the issue of ownership could have benefited from arbitration. Accordingly, Aitkins does not demonstrate that the law firm knew Aitkins was not a member of the LLC such that arbitration was an abusive measure.

B.     Discovery

Aitkins argues that the trial court erred by granting the law firm's summary judgment motion before discovery was concluded. Aitkins contends that the law firm obstructed discovery by delaying and providing incomplete responses.

A party may move for summary judgment before discovery is complete. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685, 389 P.3d 476 (2017). Under CR 56(f), a trial court may continue a summary judgment hearing for parties to obtain additional affidavits, take depositions, or conduct further discovery if it appears "from the affidavits of a party opposing the motion that for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition." "'The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact.'" *Perez-Crisantos*, 187 Wn.2d at 686 (quoting *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003)).

We review a trial court's decision on a request to continue summary judgment under 56(f) for an abuse of discretion. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 743, 218 P.3d 196 (2009).

In his opposition to the law firm's summary judgment motion, Aitkins stated that the law firm was "withholding discovery materials" showing that the law firm knew Aitkins had repeatedly told the law firm that the challenged statements were false. CP at 562. Aitkins also claimed that discovery would have revealed "the ownership status of [the LLC], as of the date they filed their

arbitration case, the untimeliness of their arbitration claim, and . . . prove[d] there was no factual basis for their defamatory statements." CP at 547.

Otherwise, in this opposition to the law firm's summary judgment motion, Aitkins did not identify any discovery that the law firm had not provided that would create a genuine dispute of material fact. Evidence demonstrating whether the law firm knew Aitkins had said the challenged statements were false and whether the statements were supported by facts would not have impacted the trial court's summary judgment decision, which was based on litigation privilege. Additionally, Aitkins did not meet his burden under CR 56(f) to identify what kinds of evidence revealing the ownership status of the LLC would have been established by further discovery—which we note was actually one of the issues that the arbitration was meant to resolve.

As a result, Aitkins did not meet the CR 56(f) standard for a continuance, so the trial court did not abuse its discretion by hearing the law firm's and McCosh's summary judgment motions at this stage in the proceedings.

C.    Jury Demand

Aitkins contends that the fact that the law firm submitted a jury demand contradicted its summary judgment motion by indicating that the law firm knew there were disputed material facts requiring a fact finder. Aitkins argues that filing both a summary judgment motion and a jury demand was "strategically abusive," and unfairly forced Aitkins to "simultaneously prepare for trial and respond to a dispositive motion." Opening Br. of Appellant at 21, 22.

When there is not a genuine issue of material fact, summary judgment proceedings do not violate a litigant's constitutional right to a jury trial. *LaMon v. Butler*, 112 Wn.2d 193, 199 n.5, 770 P.2d 1027 (1989). Though the law firm demanded a jury should the case have proceeded to

trial for fact finding, this did not prevent it from engaging in the separate procedure of bringing a summary judgment motion.

## CONCLUSION

Because the trial court was correct to conclude that the litigation privilege barred Aitkins' suit against the law firm as a matter of law, and the trial court did not err when it did not allow Aitkins more time for discovery, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CRUSER, J.